G. D. PRITCHARD, RECEIVER OF THE LEROY STEAMBOAT COMPANY, v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 23 September, 1914.)

1. **Carriers of Goods—Negligence—Water Damage—Evidence—Questions for Jury.**

    *Held,* in this action to recover of the defendant carrier damages caused to a shipment of a car-load of peanuts, that the evidence of actionable negligence on the defendant's part was sufficient which tended to show that the shipment was received from it in a damaged condition from water; that during its transportation it had been raining; that the roof of the car leaked, and that the condition of the car was such that the rain could have beaten in between its slats.

2. **Carriers of Goods—Traffic Contracts—Pleadings—Amendments—Court's Discretion.**

    In an action between two carriers involving a balance alleged to be due the plaintiff under a traffic contract, it is within the discretion of the trial judge to allow the plaintiff to amend its complaint so as to allege that it had been forced to pay damages for a shipment of goods received by it from the defendant in a damaged condition, for which the defendant's negligence, while in its care, was responsible; and while the amendment creates an additional cause of action, it is so germane to the original cause that both may be considered as one action.

3. **Carriers of Goods—Traffic Contracts—Connecting Carrier—Damage to Shipment—Payment—Limitation of Actions.**

    Where the controversy between two carriers involves a balance alleged to be due the plaintiff under a traffic contract, and the plaintiff is allowed by the court to amend its complaint to allege damages it had had to pay a customer of the road, which arose from the defendant's negligence, the cause of action thus alleged arose to the plaintiff at the time it paid the damages complained of, and the statute of limitations would begin to run from that time.

PRITCHARD *v.* R. R.

**4. Same—Trials—Burden of Proof.**

Where one carrier sues another for damages, alleged to have been paid by it, and caused by the latter's negligence, the burden of proof is on the plaintiff to show that the defendant's negligence caused the damages and that the plaintiff had paid them in the amount alleged; and in this case the evidence is held sufficient to be submitted to the jury that the damages were paid by plaintiff's drafts on money in defendant's hands, owing by the latter to the former.

**5. Contracts — Vendor and Vendee — Deferred Payments—Trials—Evidence.**

The plaintiff carrier purchased from the defendant carrier certain steamboats upon a certain cash payment, with agreement that the balance of the purchase price should be paid in equal amounts at stated times. There was evidence tending to show that the defendant carrier had moneys in its hands owing to plaintiff, under a traffic arrangement, sufficient to meet these deferred payments when due, and by the defendant's testimony it was admitted that it had plaintiff's money on hand, but could not state the amounts, and it was *Held*, on the question of allowing the defendant interest on the deferred payments, that it was for the defendant to show exactly what funds it had of plaintiff's on hand at the various times for the payment of interest, and the question was properly left to the determination of the jury.

**6. Pleadings—Amendments—Court's Discretion—Excusable Neglect —Appeal and Error.**

A refusal by the trial court to set aside a judgment rendered in an action upon contract, for surprise, inadvertence, and excusable neglect, on the ground that defendant had neglected to allege a mistake in the contract sued on, will not be disturbed on appeal when it appears that the pleadings had been filed, trial had upon the merits of the case, and the issues submitted were fully responsive to the pleadings.

APPEAL by both parties to the action, from *Ferguson, J.,* at February Term, 1914, of PASQUOTANK.

Civil action tried upon these issues:

1. Is the plaintiff's claim for damages, paid to M. Hoffman & Bro., barred by the statute of limitations? Answer: No.

2. What amount is due the plaintiff, paid M. Hoffman & Bro., damages to the 337 bags? Answer: $728.41.

3. Is the plaintiff indebted to the defendant for interest on the deferred payments on the purchase money of the boats? Answer: No.

4. What amount is due the plaintiff by defendant for money had and received? Answer: $2,247.70.

. Upon the judgment rendered, the defendant appealed.

*Aydlett & Simpson for plaintiff.*
*J. Kenyon Wilson for defendant.*

BROWN, J. This action is brought to recover a balance due from the defendant under a traffic contract, together with certain damages for injury to peanuts which the plaintiff alleges it has been compelled to pay, which injury was caused by the negligence of the defendant.

First. The plaintiff claims that in June, 1910, it received from M. Hoffman & Bro. a lot of peanuts, which under its traffic contract with the defendant it delivered to the defendant in good condition. The plaintiff further alleges that these peanuts were damaged by the negligence of the defendant while in transit to Suffolk, Va. The defendant denies the negligence and also pleads the statute of limitations. The question of negligence was properly submitted to the jury, and there is abundant evidence in the record tending to support the allegation.

The president of the LeRoy Steamboat Company testifies: "The peanuts were refused at Suffolk. I went to the agent of the Suffolk Peanut Company, and he advised me that the peanuts had been refused. Most of them were smoking from the heat. The doors of the railroad cars were gone and the rain beat in. The rain was universal for two or three weeks; the agent of the railroad said that it rained. There was nothing to keep the rain out except two or three slats. The doors were shut; they were about 6 feet high and about 10 feet wide. There was nothing in the space to keep the rain from beating in. The cars were in a bad condition and one had a leaky roof. I called Mr. Warren's attention to it, and I told him that they had no business to put peanuts in that car. The cars were wet from the inside. I did not see any cracks in the cars, but the roof was wet."

It is contended further that the claim is barred by the statute of limitations. We do not think upon the admitted facts that the plea can be sustained. It is true, the action was commenced on 18 May, 1912, and the original complaint was filed on 24 May, 1912.

The action appears originally to have been brought for an accounting and settlement of the freight money due the plaintiff under the traffic contract. We find no mention in the complaint of the damages to the peanuts which were delivered to the defendant company in June, 1910; nor do we find, as attempted to be pointed out by the plaintiff's counsel, any reference to this demand in the bill of particulars. But an amendment to the complaint was filed on 8 January, 1914, and the plaintiff claims that cause of action did not arise until July, 1911, the time when the plaintiff paid the money for the damages to the shipper of the peanuts. In this amended complaint the allegations concerning the injury to the peanuts and the payment therefor by the plaintiff are fully set out.

We are of opinion that the filing of the amended complaint was a matter in the discretion of the court, and that while it is practically an additional cause of action, it is so germane to the original cause of action that both may be considered in one action. If the cause of action arose in June, 1910, when the peanuts were injured, then we think the claim would be barred by the statute; but in our opinion the cause of action did not arise until the money was paid by the plaintiff to the owner of the peanuts, and that was in July, 1911.

His Honor, therefore, correctly charged the jury: "If you shall find that from the time the payment was made until the complaint was filed this January, there was less than three years, the statute does not bar the claim. If the payments were made in July, 1911, then the statute does not bar the claim, and you would answer the issue "No."

As between the common carrier and the shipper, the cause of action would arise when the damage ensued and the injury was inflicted; but now as between common carriers themselves, a cause of action would not arise in behalf of one carrier against

the other until the common carrier suing for the same had paid the damages, as until that had been done it would have sustained no injury.

The LeRoy Steamboat Company and the defendant were practically copartners in the transportation business, and each is liable for any damage resulting from delay or otherwise on the lines of each other; but the one could not recover from the other damages which it had never been called upon or required to pay. *Mills v. R. R.,* 119 N. C., 694.

There is quite a distinction between the case at bar and that of *Penn. Co. v. C. N. and St. Paul Ry. Co.,* 144 Ill., 197. In that case one railroad company sued another for goods which it had delivered to it and which the defendant company had allowed to go astray, and for which a judgment had been rendered in behalf of the owner against the plaintiff company.

There is nothing in the record which shows that there was any traffic contract existing between the two companies for joint transportation. At the time the judgment was rendered, in 1893, the Carmack amendment was not in force. Therefore it was the ordinary case of a bailee delivering goods to another bailee, or of one common carrier employing another common carrier as its agent to make delivery of goods which had been received by it. In that case the cause of action, as was properly held by the Illinois Court, arose in behalf of the Pennsylvania Company against the defendant company when it failed to make delivery of the goods.

We think the cause of action accrued here when the LeRoy Steamboat Company paid the money to Hoffman. It is contended that there is no evidence in the record that the steamboat company ever paid the money to Hoffman. This contention cannot be sustained. There is evidence in the record of two drafts dated 28 July, 1911, one for $1,650 and one for $200. It is contended by the plaintiff that these drafts, drawn on the funds of the LeRoy Steamboat Company in the hands of the defendant and paid by the defendant and charged up to the LeRoy Steamboat Company, embraced the money paid for the damaged peanuts, and there is evidence to sustain this contention.

It is true, as contended, that no judgment has ever been rendered against the plaintiff company for these damages, but the plaintiff was not obliged to stand a suit for a claim which it acknowledged to be just. The burden of proof is upon the plaintiff and was so placed by the judge below to make out this claim against the defendant by a clear preponderance of evidence.

Second. It is contended that his Honor erred in refusing to charge the jury that the plaintiff was not indebted to the defendant for interest on the deferred payments for the steamboats purchased by the LeRoy Steamboat Company from the defendant. It appears that by virtue of a written contract the defendant sold to the said steamboat company three steamers for the sum of $15,000; $4,000 of which was paid in cash and $11,000 was to be paid in thirty-three equal monthly installments of $333.33 each.

It is admitted in the defendant's answer that there was an agreement entered into between the defendant and plaintiff by which certain through rates were established over said lines, and the agreement provided that the defendant should apply the money due the LeRoy Steamboat Company to the adjustment of claims of the defendant against the said company.

The plaintiff claims that these interest charges, if any were due under the contract for the sale of the steamers, were paid by the defendant to itself out of these moneys belonging to the plaintiff. That question was left to the jury, we think very correctly, in these words by his Honor:

"I charge you that if you shall find from the evidence that at the time that the monthly payments became due, that the defendant company had in its hands money of the plaintiff company sufficient to meet the monthly payments as they fell due, the defendant would be entitled to no interest, and, therefore, if you so find from the evidence, it would be your duty to disallow the claim for interest."

The defendant contends that there was no evidence to support this charge. There is not only evidence offered by the plaintiff tending to support it, but the defendant's own witness, Metcalf,

testified: "The· payments were made each month. I will not say that every month the. steamboat company did not have enough in our hands to pay the amount due. Whatever we owed the steamboat company at the first of the month did not go to its credit till the 25th. I presume that we had more than enough on the 25th of each month to pay the account of the steamboat company."

This evidence is sufficient to go to the jury so as to call upon the defendant to show exactly what funds it had in its hands belonging to the plaintiff at that time. Having failed to do so, we think the jury warranted in. finding the issue in favor of the plaintiff.

We have carefully examined the other exceptions taken by the defendant, and we find them to be without merit.

No error.

### DEFENDANT'S APPEAL.

At the following term of court the defendant moved to set aside the judgment rendered at the February Term, 1914, upon the ground of surprise, inadvertence, and excusable neglect. A number of affidavits were filed, upon which his Honor, *Judge Ferguson,* made his findings of fact and declined to set aside the judgment, and the defendant appealed.

It is said in the brief of counsel for the defendant that the neglect in this case consisted in the failure of the defendant in drafting its complaint to allege that there had been a mistake of the draftsman in drawing the contract, and in failing to introduce evidence of this mistake. It was an equitable defense which should have been pleaded, and counsel failed to plead the same, and failed to have evidence at the trial to support the contention.

We find upon an examination of the record that the defendant not only answered the original complaint, but in February, 1914, before his case was tried filed an answer to the amended complaint. It is true, the counsel did not set up these particular defenses referred to in his brief, but the Court cannot set aside a judgment for that reason. The case was tried before a

jury, by counsel on both sides, and the issues submitted. These issues were responsive to the pleadings, and if the counsel desired other issues submitted, he should have tendered them to the court, and it was his privilege to ask the court to allow him to amend his answer.

Nothing of that sort was done. It is too late, therefore, after the trial is over and judgment is rendered, at a subsequent term, to ask the court to set aside a judgment because certain defenses were not made at the time of the trial.

It is held in *Stockton v. Mining Co.,* 144 N. C., 596, that an order of the court below setting aside a judgment by default and inquiry will be reversed on appeal by the Supreme Court when it appears that the delay in filing the answer was occasioned by the system of the defendant in employing foreign counsel to draft the answer, when such could have been left to the local counsel in attendance upon the court.

In the affidavits and findings in this case no reason is given why the counsel who tried the case in the Superior Court of Pasquotank County could not as well have pleaded in his answer these several defenses without the assistance of the general counsel of the defendant.

The ruling of his Honor refusing to set aside the judgment is Affirmed.