PREMIER CORPORATION, Appellant,

v.

ECONOMIC RESEARCH ANALYSTS, INC., Appellee.

No. 77–1376.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1978.

Decided July 10, 1978.

John R. Wester, Charlotte, N. C. (Fleming, Robinson & Bradshaw, Charlotte, N. C., on brief), for appellant.

(Guy K. Stewart, Miami Shores, Fla., on brief), for appellee.

Before BUTZNER, WIDENER and HALL, Circuit Judges.

BUTZNER, Circuit Judge:

Premier Corp., an issuer of securities, appeals from a judgment of the district court, entered on a motion for a directed verdict,

dismissing its claim for indemnification or contribution from a broker, Economic Research Analysts, Inc., for losses sustained in connection with illegal sales by the broker in North Carolina. Premier also appeals the dismissal of its claim on a promissory note executed and delivered by the broker. We vacate the judgment in part and remand the case for further proceedings.

## I

On June 30, 1971, Premier registered an offering with the federal Securities and Exchange Commission for the sale of cattle and optional contracts for their care and breeding. Premier also registered this offering under the blue sky laws of approximately 25 states in which sales were contemplated. Effective June 30, 1971, Premier and the broker, Economic Research Analysts, Inc., agreed that the broker would sell the investment contracts in states in which it was licensed to operate. Their agreement contained the following provision for indemnification:

> [The broker] shall be qualified as a dealer and its salesmen qualified as agents in such states as may be necessary in order to offer the cattle for sale. [The broker] shall comply with all federal and state statutes, rules and regulations applicable to such sales, and shall not give any information or make any representations in connection with such sales other than as contained in the Prospectus. [The broker] agrees to indemnify and hold harmless Premier against any and all losses, claims, expenses or liabilities arising out of [the broker's] failure to comply with the provisions of this paragraph.

Premier sought to register its offering in North Carolina, but on July 7, 1971, the Deputy Secretary of State for securities responded by letter that he would not approve the registration. He noted, however, that a purchase by a North Carolina resident in a state where the offering was registered would be beyond the jurisdiction of his office. Upon receipt of this letter on July 15, Premier's attorney called the broker's president, read him the letter, and forwarded a copy of it. Premier thereafter informed the broker of the states in which the offering was registered, and North Carolina was never included among them. Between July and December, 1971, the broker made a number of sales to North Carolina residents, most of which are alleged to have been made within the state.

In April, 1975, the broker notified Premier that criminal indictments would soon be returned in North Carolina against Premier and its officers arising from sales of unregistered securities in 1971. The state officials subsequently agreed with Premier to drop the prosecution if Premier offered to reimburse all North Carolina buyers for their investments. In fulfilling this offer, Premier paid buyers who dealt with the broker $260,478 in cash, cancelled $386,246 in debts, and received cattle worth $132,000, for a net cost to Premier of $514,722. The broker contributed nothing to this settlement, and Premier sued in September, 1975, for indemnity or contribution based on the broker's contractual undertaking and, alternatively, on a theory of breach of fiduciary duty.

At the close of the defendant's case, the district court held that Premier's claim was barred by North Carolina's three-year statute of limitations on contract actions, N.C. Gen.Stat. § 1–52 (Cum.Supp.1977). The court reasoned that despite the presence of an express indemnity provision in the contract, the document as a whole was an ordinary contract on which the statute of limitations began to run at the time of the illegal sales. It rejected Premier's argument that an indemnity contract is not breached until the indemnitee incurs a loss for which he can claim reimbursement.[1]

## II

North Carolina follows the general rule that a cause of action on an obliga-

---

1. The district court dismissed the broker's counterclaim for failure of proof. The broker appealed this ruling but later withdrew its appeal.

tion to indemnify normally accrues when the indemnitee suffers actual loss. *Lackey v. Southern Ry.*, 219 N.C. 195, 13 S.E.2d 234 (1941); *Pritchard v. Norfolk Southern Ry.*, 166 N.C. 532, 82 S.E. 875 (1914); *Hager v. Brewer Equipment Co.*, 17 N.C.App. 489, 195 S.E.2d 54 (1973); 7 Strong's North Carolina Index 3d, § 2.3, at 96 (1977).[2] The same rule applies to the accrual of a cause of action for contribution between joint tort-feasors. *Godfrey v. Tidewater Power Co.*, 223 N.C. 647, 649–50, 27 S.E.2d 736, 737–38 (1943).

■ The claim presented by Premier is within the intended scope of the indemnity agreement. Furthermore, it is uncontested that some sales made by the broker were illegal under North Carolina law and that Premier faced certain conviction had it not agreed to rescind them. Premier brought suit on the indemnity contract several months after it reimbursed the investors to whom the broker had illegally sold the securities. We therefore hold that Premier's claim for indemnity under the contract was not barred by North Carolina's statute of limitations.

■ The broker also seeks affirmance of the dismissal of Premier's claim on grounds other than the statute of limitations. We find no merit in these. The expiration of the brokerage contract in 1972 did not discharge the broker's obligation to indemnify Premier for the loss arising from illegal sales made while the contract was in effect. *South Carolina Electric & Gas Co. v. Utilities Construction Co.*, 244 S.C. 79, 90–92, 135 S.E.2d 613, 618–19 (1964). Premier's payment without the compulsion of a judgment affords the broker no defense. It simply places on Premier the burden of showing that the settlement was reasonable. *Pritchard v. Norfolk Southern Ry.*, 166 N.C. 532, 537, 82 S.E. 875, 877 (1914). Nor is Premier's claim barred by the absence of

formal notice to the broker that Premier was required to rescind the sales to North Carolina residents. Although no North Carolina precedent dealing with precisely this issue has been called to our attention, we believe that the state's Supreme Court would adhere to the general rule that notice is unnecessary unless the contract of indemnity requires it. *See Pritchard v. Norfolk Southern Ry.*, 166 N.C. 532, 82 S.E. 875 (1914) (by implication); *cf. Boston & Maine R. R. v. Bethlehem Steel Co.*, 311 F.2d 847, 849 (1st Cir. 1963).

There remain, however, the issues raised by the evidence concerning Premier's contemporaneous knowledge that the sales were illegal. The broker's president testified that orders were taken for several of these sales in early July at the direction of Premier's president. The buyer's checks were dated and the transactions were entered on Premier's books some weeks after the sales orders. The broker testified that Premier was aware that these sales had been solicited before receipt of the Deputy Secretary's letter. He insisted that Premier nevertheless approved them and indicated that a limited number of similar transactions would also be approved. He explained that he completed the sales in North Carolina because he relied on Premier's assurances, which he understood to be based on the advice of its legal counsel.

In contrast, Premier's president testified that he had been assured in the summer of 1971 that the broker could arrange to transact business outside North Carolina with state residents who were interested in Premier's offering. He said that he knew that the broker had made one sale to a North Carolina resident at Premier's facilities in Michigan and that he was not familiar with the details of other sales. He also testified that not until 1975 did he become aware of the broker's illegal sales in the state.

---

2. Williston succinctly explains the reason for this rule:

The Statute runs from the time of the breach though no damage occurs until later; and it is no exception that on an obligation to indemnify against loss there must be damage

before the statutory period begins, for by the nature of such a contract there is no breach until there is damage.

6 Williston on Contracts § 2004, at 5641–42 (2d ed. 1938).

If a jury should find that Premier knowingly participated in these illegal sales, public policy would prohibit enforcement of the indemnity agreement. *See Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1287–89 (2d Cir. 1969), *aff'g* 287 F.Supp. 188, 199 (S.D.N.Y.1968) (*Globus I*). This would not, however, necessarily preclude Premier from recovering contribution against the broker. *See* N.C.Gen.Stat. § 78A–56 (Cum.Supp.1977);[3] *Godfrey v. Tidewater Power Co.*, 223 N.C. 647, 27 S.E.2d 736 (1943); *Nebel v. Nebel*, 223 N.C. 676, 684–85, 28 S.E.2d 207 (1943); *Globus, Inc. v. Law Research Service, Inc.*, 318 F.Supp. 955 (S.D.N.Y.1970), *aff'd*, 442 F.2d 1346 (2d Cir. 1971) (*Globus II*). Because of the conflicting evidence about Premier's knowledge of the locale of the sales, these issues cannot be decided here, and we express no opinion on their merits. On remand they must be addressed by the district court.

### III

The record discloses that Premier loaned the broker $25,000 for which the broker executed its unconditional promissory note dated July 1, 1974, payable in six months. Although the broker executed no formal written pledge, the parties understood that the note would be secured by the broker's future commissions. The evidence, however, does not establish that the parties intended that the broker's failure to earn sufficient commissions to repay the loan would discharge the debt. Therefore, we conclude that Premier was entitled to judgment on the unpaid note. On remand, judgment should be entered in its favor according to the terms of the note.

The judgment of the district court dismissing counts I, I–A, and III of Premier's complaint is vacated, and this case is remanded for further proceedings consistent with this opinion. Premier shall recover its costs.

---

**3.** N.C.Gen.Stat. § 78A–24 (Repl.Vol.1975) provides in part:

It is unlawful for any person to offer or sell any security in this State unless (i) it is registered under this Chapter . . .

N.C.Gen.Stat. § 78A–56(c) (Cum.Supp.1977) provides in part:

[E]very dealer or salesman who materially aids in the sale [of an unregistered security] . . . . [is] also liable jointly and severally with and to the same extent as such person [who offers or sells an unregistered security], unless the person who is so liable sustains the burden of proof that he did not know, and did not act in reckless disregard, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.