**WALKER MANUFACTURING COMPANY, a Division of Tenneco, Inc., Appellee,**

v.

**DICKERSON, INCORPORATED, Appellant.**

**SEABOARD SURETY COMPANY, a corporation, Defendant & Third-party Plaintiff,**

v.

**PIEDMONT ENGINEERING AND ARCHITECTS, INC., also d/b/a Piedmont Engineers and Architects, Appellee,**

**and**

**Edward's Roofing & Sheet Metal Company, a corporation, also d/b/a Edward's Sheet Metal Company, Third-party Defendant,**

**and**

**The Celotex Corporation (formerly Philip Carey Corporation), Appellee.**

**WALKER MANUFACTURING COMPANY, a Division of Tenneco, Inc., Appellee,**

v.

**DICKERSON, INCORPORATED, Appellee.**

**SEABOARD SURETY COMPANY, a corporation, Defendant & Third-party Plaintiff,**

v.

**PIEDMONT ENGINEERING AND ARCHITECTS, INC., also d/b/a Piedmont Engineers and Architects, Third-party Defendant,**

**and**

**Edward's Roofing & Sheet Metal Company, a corporation, also d/b/a Edward's Sheet Metal Company, Appellee,**

**and**

**The Celotex Corporation (formerly Philip Carey Corporation), Appellant.**

**WALKER MANUFACTURING COMPANY, a Division of Tenneco, Inc. Appellee,**

v.

**DICKERSON, INCORPORATED, Appellee.**

**SEABOARD SURETY COMPANY, a corporation, Defendant & Third-party Plaintiff,**

v.

**PIEDMONT ENGINEERING AND ARCHITECTS, INC., also d/b/a Piedmont Engineers and Architects, Appellee,**

and

**Edward's Roofing & Sheet Metal Company, a corporation, also d/b/a Edward's Sheet Metal Company, Appellant,**

and

**The Celotex Corporation (formerly Philip Carey Corporation), Appellee.**

**78–1669, 78–1670 and 78–1698.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1979.

Decided April 2, 1980.

Robert B. Cordle, Charlotte, N. C. (Helms, Mulliss & Johnston, Charlotte, N. C., on brief), S. Dean Hamrick, Charlotte, N. C. (F. Lane Williamson, Fairley, Hamrick, Monteith & Cobb, Charlotte, N. C., on brief), Koy E. Dawkins, Monroe, N. C. (Dawkins, Glass & Lee, P. A., James E. Griffin, Monroe, N. C., on brief), for appellants.

James P. Erwin, Jr., Asheville, N. C. (McGuire, Wood, Erwin & Crow, P. A., Asheville, N. C., on brief), and Victor M. Harding, Milwaukee, Wis. (Whyte & Hirschboeck, S. C., Milwaukee, Wis., on brief), for appellee.

Before FIELD, Senior Circuit Judge, HALL, Circuit Judge, and THOMSEN, Senior District Judge.*

THOMSEN, Senior District Judge:

## I.

On August 6, 1975, Walker Manufacturing Company (Walker) filed its complaint herein against Dickerson, Incorporated (Dickerson) and its surety, Seaboard Surety Company (Seaboard), alleging that Dickerson had breached a written contract by the improper construction of the roof on a manufacturing and warehouse building at Arden, North Carolina. Walker was the owner of the building and Dickerson was the general contractor for its construction. Dickerson and Seaboard filed third-party complaints for indemnity and contribution against the roofing subcontractor, Edward's Roofing & Sheet Metal Company (Edwards), the architect, Piedmont Engineering and Architects, Inc. (Piedmont), and the manufacturer of the roofing materials, The Celotex Corporation (Celotex).[1] Edwards cross-claimed against both Piedmont and Celotex for indemnity.

Prior to trial all parties filed motions for summary judgment; the court granted Seaboard's motion and dismissed it from the case. Walker did not appeal from that order. The district judge severed the third-party claims and cross-claims, and the principal case was tried before a jury in July 1976. At the conclusion of the plaintiff's evidence the court granted Dickerson's motion for a directed verdict, holding that Walker's action was barred by the North Carolina three-year statute of limitations. N.C.Gen.Stat. § 1–52(1). In applying the statutory bar, the district court concluded that the evidence was insufficient to permit the jury to consider the application of the doctrine of equitable estoppel. Upon appeal we concluded that upon the facts presented at the trial reasonable men could differ on the issue of equitable estoppel, and, accordingly, that the district court erred in directing a verdict. In remanding the case, we also directed that the court determine whether the ten-year period of limitations for sealed instruments under N.C.Gen.Stat. § 1–47(2) had any application to the case. *Walker Manufacturing Co. v. Dickerson*, 560 F.2d 1184 (4 Cir. 1977).

Following the remand, on cross-motions for summary judgment, the district judge held that the ten-year statute of limitations for sealed instruments did not apply in this action, and that it was governed by the three-year statute. Walker did not appeal from that ruling. The principal case was re-tried and upon the issues submitted to it the jury found that Dickerson had breached its contract with Walker and was estopped by its conduct from asserting the defense of the statute of limitations. Damages were assessed by the jury in the amount of $194,000, and judgment was entered against Dickerson in that amount. Dickerson has appealed.

At the trial of the third-party claims, the court submitted twelve issues to the jury, which found that Edwards had breached its subcontract with Dickerson, and that Dickerson was entitled to recover the sum of $194,000 from Edwards. Although the jury

---

* Of the District of Maryland, sitting by designation.

1. The roofing materials were supplied by Philip Carey Corporation, the predecessor of Celotex. To simplify matters, they will be referred to herein collectively as Celotex.

found that Piedmont and Celotex had been negligent, the jury also found that Dickerson was estopped from asserting any claim against either of them. The jury found, however, that Celotex had breached its warranty with Edwards and that Edwards was entitled to recover $97,000 from Celotex;[2] the jury also awarded Edwards $48,500 from Piedmont. A judgment was entered reflecting the various findings of the jury, and Dickerson, as well as the third-party defendants, Edwards, Piedmont and Celotex, appealed. Piedmont, however, has dismissed its appeal. This opinion deals with all of the appeals still pending.

## II.

The factual background, briefly stated, is as follows: On April 21, 1969, Walker entered into a written contract with Dickerson as general contractor for the construction of the subject building. The roofing specifications called for the installation of a "twenty year bonded tar and slag roof" which would be "absolutely water tight" when the installation was completed. Under the contract, which conformed to the model agreement of the American Institute of Architects, Dickerson, as general contractor, was responsible "for the acts and omissions of all [its] employees and all Subcontractors, their agents and employees, and all other persons performing any of the work" under a contract with Dickerson. Construction began in 1969 and was completed in May of 1970. The installation of the roofing was performed by Edwards, as subcontractor, and when the roofing work was completed Edwards gave Dickerson and Walker a one year guaranty or warranty of good workmanship, extending from May 25, 1970, until May 24, 1971.

■ Shortly after completion of the work blisters and leaks developed in the roof. Edwards made a number of unsuccessful attempts to correct the problem, but ceased its efforts when the warranty expired.

Walker then turned to Dickerson for correction of the problem, but Dickerson's attempts to repair the roof were largely unsuccessful, despite the fact that Dickerson spent over $75,000 in the effort. We need not detail the various steps taken by Dickerson nor the negotiations between Walker and Dickerson covering the period from June 1971 until May 1975. We find sufficient evidence in the record to support the jury's finding that Dickerson had breached its contract with Walker and was estopped from asserting the defense of the statute of limitations against Walker. Accordingly, the judgment obtained by Walker against Dickerson is affirmed.

■ With respect to the various third-party claims the indemnity clause in Edwards' roofing subcontract supports the judgment in favor of Dickerson against Edwards in the full amount of the $194,000 verdict which Walker had obtained against Dickerson in the trial of the principal case. Piedmont has dismissed its appeal from the judgment obtained by Edwards in the cross-claim of Edwards against it. So, the questions remaining for our consideration deal with (A) the propriety of the judgment which Edwards obtained against Celotex in the amount of $97,000 based upon its breach of warranty, and (B), Dickerson's contention that it was entitled to judgment against Celotex based on the alleged negligence of Celotex.

## III.

The involvement of Celotex in this action stems from its sale to Edwards of roofing felt known as Philip Carey 300. The materials were delivered to Edwards during the period September–December 1969. Celotex offered, for a stated premium, to issue bonds on roofs using its materials and installed in accordance with its specifications, but no bond was obtained from it by any of the parties to this controversy. After roofing problems developed, a sales representa-

---

2. Edwards' cross-complaint alleged negligent manufacture by Celotex in language similar to that employed by Dickerson. However, Edwards tendered no issue on the charge of negligence and its claim against Celotex was submitted to the jury only upon the issue of breach of warranty.

tive of Celotex met with representatives of the other parties at the job site on September 16, 1971. Thereafter, its representative received copies of two letters directed to Walker by Dickerson, the last letter dated November 16, 1971. None of the parties made a claim or demand against Celotex based upon the sale of the roofing material to Edwards until Dickerson's third-party complaint was filed in this action on September 8, 1975.

### (A)

In challenging Edwards' judgment against it, the principal contention of Celotex is that any claim of Edwards growing out of the sale of the roofing material is time-barred by the provisions of the Uniform Commercial Code, N.C.Gen.Stat. 25–2–725, effective in North Carolina on July 1, 1967, which provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Since the statute states that the cause of action accrues upon tender of delivery, regardless of any lack of knowledge on the part of the aggrieved party, Celotex contends that Edwards' claim is time-barred because its third-party complaint was filed well over four years after the last delivery of roofing material in December 1969.

Edwards argues and the district court held that under North Carolina law, where one person's liability for a tort or breach of warranty committed by another is second-ary, the statute of limitations does not commence to run against his right to indemnity from the party primarily liable until damages have been paid to the injured party.

The contract for the roofing material was made in North Carolina; the material was delivered and used in that state; so, North Carolina law applies. In *Premier Corp. v. Economic Research Analysts*, 578 F.2d 551, at 553–54 (4 Cir. 1978), we said:

North Carolina follows the general rule that a cause of action on an obligation to indemnify normally accrues when the indemnitee suffers actual loss. *Lackey v. Southern Ry.*, 219 N.C. 195, 13 S.E.2d 234 (1941); *Pritchard v. Norfolk Southern Ry.*, 166 N.C. 532, 82 S.E. 875 (1914); *Hager v. Brewer Equipment Co.*, 17 N.C. App. 489, 195 S.E.2d 54 (1973); 7 Strong's North Carolina Index 3d, § 2.3, at 96 (1977).[2]

The footnote quoted from 6 Williston on Contracts § 2004, at 5641–42 (2d ed. 1938), as follows:

The Statute [of Limitations] runs from the time of the breach though no damage occurs until later; and it is no exception that on an obligation to indemnify against loss there must be damage before the statutory period begins, for by the nature of such a contract there is no breach until there is damage.

In *Hager*, cited in the above quotation from *Premier Corp.*, a worker was injured when the driveshaft of an elevator broke, causing it to fall. An action in negligence was filed against the furnisher of the elevator; the furnisher then filed a third-party action against the seller of the elevator for indemnity, based upon negligence and breach of warranty. The court held that the applicable statute of limitations would not begin to run against the indemnity claim until after payment and satisfaction of the debt. The court quoted with approval the following passage from 51 Am.Jur.2d, Limitations of Actions, § 287, at p. 802:

The general rule is that where the original defendant alleges facts showing that the additional defendant is liable over to him, joinder is generally held to be prop-

er, and the fact that the statute of limitations will bar the plaintiff from a direct recovery against the additional defendant has no effect on the defendant's right to enforce his claim of contribution or indemnity, since the cause of action owned by the plaintiff is distinct from the cause of action arising out of the duty of the additional defendant to indemnify the original defendant.

17 N.C.App. at 492–93, 195 S.E.2d at 56–57.

The court further stated:

Except in states which have enacted statutes providing otherwise, it is almost universally held that where one person's liability for a tort or breach of warranty committed by another is secondary, the statute of limitations does not start running against his right to indemnity from the party primarily liable until he has paid damages to the injured party.

*Id.* at 493, 195 S.E.2d at 57.

The *Hager* court noted that § 25–2–725 of the U.C.C. had not been adopted in North Carolina at the time the sales involved therein had been made; but indicated that its decision would not have been different if that section had been applicable; it noted that the third-party plaintiff therein was not seeking to recover for damages it sustained as a *direct* result of a defect in the elevator at the time of purchase. The court stated:

. . . . Such a claim for relief would be barred because Brewer would have had a right to sue for nominal damages at least at the time it purchased the elevator. (citing cases) Brewer's claim for indemnity is separate and distinct from any possible claim that may have arisen at the time the elevator was purchased and consequently the statute of limitations did not begin to run against the indemnity claim at that time.

17 N.C.App. at 494, 195 S.E.2d at 58.

█ The indemnity claim which Edwards is asserting against Celotex in the case at bar was filed promptly after the third-party claim by Dickerson against Edwards was filed. We conclude that it was not time-barred. The U.C.C. was not intended to shield manufacturers of defective products from indemnity claims made by their purchasers more than four years from the date of sale by the manufacturer. The judgment entered by the district court in favor of Edwards against Celotex was proper.

### (B)

█ Finally, we come to Dickerson's claim against Celotex for $75,000 spent by Dickerson in attempting to repair the defective roof. This claim is in addition to the claim of Dickerson against Edwards, on which Dickerson received a judgment for $194,000, the full amount for which Dickerson was held liable to Walker. Edwards, in turn, has received a judgment for half of this liability ($97,000) against Celotex and for half of the remainder against Piedmont.

The court below submitted to the jury four issues dealing with Dickerson's claim against Celotex. Those issues and the jury's answer to each were as follows:

6. Was Celotex negligent in the design or manufacture of the roofing materials used in the Arden plant, or was it negligent in providing defective specifications for the application of said roofing materials?

ANSWER: <u>Yes</u>

7. If so, was such negligence the proximate cause of the failure of the Arden plant roof?

ANSWER: <u>Yes</u>

8. What damages, if any, is Dickerson, Incorporated, entitled to recover of Celotex?

ANSWER: <u>$–0–</u>

12. Is Dickerson, Incorporated, estopped from asserting any claims against Celotex and Piedmont?

ANSWER: <u>Yes</u>

There was evidence to justify all of the findings the jury made on these issues. We have considered the arguments made by

Dickerson in its brief and oral argument on the question of estoppel, but find no reversible error in the submission of those issues to the jury or the instructions given to the jury by the trial judge thereon.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

FIELD, Senior Circuit Judge, concurring and dissenting:

I agree with the disposition of these appeals except for the judgment obtained by Edwards against Celotex based upon its alleged breach of warranty, which, in my opinion, was time-barred. Concededly, Edwards' direct cause of action on the warranty claim was barred by the U.C.C. statute of limitations, N.C.Gen.Stat., 25–2–725, as amended, since its third-party complaint was filed over four years after the last delivery by Celotex in 1969. The majority, however, concludes that Edwards' liability to Dickerson entitled it to indemnity from Celotex, and that the statute of limitations did not commence to run against the indemnity claim until Edwards was required to pay damages to Dickerson.

In reaching this conclusion, the majority observes that "[t]he U.C.C. was not intended to shield manufacturers of defective products from indemnity claims made by their purchasers more than four years from the date of sale by the manufacturer." I think, however, it is necessary to emphasize that the liability of Celotex in this case was not based upon negligence nor upon the existence of any defect in its product. Liability was based solely upon the breach of warranty of merchantability and/or fitness of the roofing felt which was sold and delivered to Edwards. This narrow basis of liability is important to bear in mind in considering the indemnity approach of the majority.

We, of course, are not concerned here with any express contract of indemnity, and if Edwards has a basis for recovery from Celotex, it must be under what is sometimes termed "common law indemnity". Such a right of indemnity arises by operation of law where, for example, a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter. Unquestionably, if Celotex had furnished a product to Edwards which had been negligently manufactured and by reason thereof caused injury to a customer of Edwards, Edwards would be entitled to recover from Celotex under this principle of common law indemnity for any damages which it was required to pay to the injured customer. And in such a case Edwards' cause of action would accrue and the statute of limitations would commence to run only from the time when Edwards suffered a loss by paying the injured customer. However, as I have stated, we are not dealing here with any charge of negligence on the part of Celotex, but solely with the issue of its liability for a breach of warranty under the U.C.C.

The courts which have had occasion to consider the question have been careful to differentiate between claims for common law indemnity based upon the alleged negligence of a party as contrasted to his liability for a breach of warranty under the U.C.C. In *PPG Industries, Inc. v. Genson*, 135 Ga.App. 248, 217 S.E.2d 479 (1975), the original plaintiff alleged that his decedent had fallen through a glass wall negligently maintained on the defendant's premises. The defendant-owner filed a third-party complaint against PPG Industries, the glass sub-contractor, alleging both negligence and breach of implied warranty of merchantability. Speaking to the breach of warranty claim, the court observed:

The applicable statute of limitation on the contract claim against PPG is four years, which began to run when the alleged breach occurred. Uniform Commercial Code § 109A–2–725. The breach occurred, if at all, when the glass was installed and accepted. * * * Since

more than four years elapsed between the date of installation and acceptance and the filing of the third-party complaint, the contract claim is barred by the statute. (Citations omitted).

217 S.E.2d at 480. The court did, however, recognize the viability of the negligence count and addressed itself to the merits of that claim.

This distinction between a negligence claim and one based upon breach of warranty was also recognized by the First Circuit in *Wolverine Insurance Co. v. Tower Iron Works, Inc.*, 370 F.2d 700 (1966). In that case the third-party defendant, Tower, had designed and installed a swimming pool on premises owned by Families. A young man, Duckworth, was injured while diving into the pool and brought suit against Families on the ground that the pool was negligently designed. Families' insurer, Wolverine, settled the principal lawsuit and filed an action, as subrogee, against Tower. Two counts of the complaint charged Tower with breach of warranty of fitness and merchantability, while the remaining two counts charged it with negligent design and installation. The court held that the counts of the complaint charging breach of warranty were barred by the U.C.C. statute of limitations, stating, "[i]t is clear that a cause of action for breach of a sales contract, express or implied, accrues when delivery is made, regardless of the buyer's knowledge of the breach." 370 F.2d 702. On the other hand, like the court in *PPG Industries*, the First Circuit recognized that the negligence counts stated a cause of action for common law indemnity.

A similar conclusion was reached in *Raymond-Dravo-Langenfelder v. Microdot, Inc.*, 425 F.Supp. 614 (D.Del.1977). In that case, Raymond-Dravo-Langenfelder (RDL) was the prime contractor for the construction of a bridge and purchased a number of steel pier forms from Maryland Liquidating Company (MLC). Microdot, the parent corporation of MLC, guaranteed the performance of the contract by MLC. MLC entered into a sub-contract with Maryland Shipbuilding under which Maryland Shipbuilding fabricated one of the pier forms and delivered it to the construction site. Shortly thereafter the pier form collapsed and RDL instituted an action against MLC. The court held that any claim of RDL against MLC based upon breach of warranty was barred by the U.C.C. statute of limitations involving the sale of goods. In so holding, the court made the following observations:

> The Code clearly states that a cause of action for breach of warranty accrues when tender of delivery is made. Whether or not the buyer at that time 'accepts' the goods, as that term is used in the Code, or, on the other hand, withholds acceptance until he or she has had an opportunity to fully inspect for defects, does not affect when the buyer must institute suit for breach of warranty. This is so even if the defect does not appear until after the limitations period has run. (Footnotes omitted).

425 F.Supp. at 617.

> The difficulty of determining conformity with a warranty at the time of delivery is a problem common to many situations involving warranties by description. Such difficulties have not been regarded as controlling, however, in the absence of contract language explicitly warranting future performance. The drafters of the UCC decided that the seller's need to have some clearly defined limit on the period of its potential liability outweighed the buyer's interest in an extended warranty and reserved the benefits of an extended warranty to those who explicitly bargain for them.

425 F.Supp. at 618. Microdot filed a third-party action against Maryland Shipbuilding, seeking to hold it liable for any damages RDL might recover from Microdot. The court held that the third-party complaint presented a breach of warranty theory for recovery which was barred by the four-year statute of the U.C.C. since the warranty

action had accrued when Maryland Shipbuilding tendered the pier for delivery. The court went on to observe, however, that if MLC and/or Microdot could establish that their liability was occasioned by the negligence of Maryland Shipbuilding, they would have a claim for common law indemnity against Maryland.

The majority places considerable reliance upon *Hager v. Brewer Equipment Company*, 17 N.C.App. 489, 195 S.E.2d 54 (1973). As they note, however, the original cause of action in that case was based upon negligence, and while the third-party action seeking indemnity from the seller of the elevator was stated to be upon both negligence and breach of warranty, it occurs to me that the basis of decision in that case was the established common law right of indemnity where the indemnitee has been compelled to pay damages occasioned by the primary negligence of another.

The purpose of this period of limitations in the U.C.C. was stated as follows:

*Purposes*: To introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice. This is within the normal commercial record keeping period.

*Uniform Commercial Code*, § 25–2–725 Official Comment. The statute was designed to apply to the myriad of ordinary mercantile transactions such as the case at hand which take place every day throughout the country and to provide a degree of uniform

finality to them. Such an application of the statute will not insulate a manufacturer from liability for injury to consumers resulting from the negligent manufacture of a product or the failure to warn of dangers incident to its intended use;[1] nor will it, under such circumstances, shield manufacturers of defective products from indemnity claims made by their purchasers.

In *L. E. Talcott & Sons, Inc. v. Aurora Corporation*, 176 F.Supp. 783, 786 (D.Del. 1959), aff'd 280 F.2d 128 (3 Cir. 1960), the court, in rejecting the theory advanced by Edwards and adopted by the majority in the present case, stated:

Unless the original contract so provided, it would be difficult to determine that a vendee holding under an implied warranty of fitness could retain the article beyond any statute of limitations and then sell it with his own warranty of fitness and, having made good on his own warranty, hold his original vendor upon a claim of indemnity and not upon the warranty of fitness. Such result would imply that the vendee could make inoperative any statute of limitations or create and control his own limitation.

I agree with this observation for in my opinion such a theory of indemnity will in many cases read the statute of limitations out of the U.C.C. and destroy the uniformity and finality which the Code was designed to achieve.

---

1. *See, e. g., Gardner v. Q. H. S., Inc.*, 448 F.2d 238 (4 Cir. 1971); *Spruill v. Boyle-Midway, Incorporated*, 308 F.2d 79 (4 Cir. 1962); 2 Restatement of Torts, 2d §§ 388, 394 and 395 (1965 Ed.).