Josephine R. TILDEN, guardian of Lydia Tilden, Plaintiff below, Appellants,

v.

Kurt ANSTREICHER, M.D., Individually and as Director of the Division of Mental Health and Retardation, et al., Defendants below, Appellees.

Supreme Court of Delaware.

Submitted Sept. 17, 1976.

Decided Dec. 7, 1976.

---

C. Waggaman Berl, Jr., Wilmington, for plaintiff below, appellant.

Raymond L. Becker, of Becker & Ferri, Wilmington, for Kurt Anstreicher, M.D., Individually and as Director of the Division of Mental Health and Retardation.

Rodney M. Layton and Jane R. Roth, of Richards, Layton & Finger, Wilmington, for Karnik Gurdikian, M.D., Individually and as Clinical Director and Chief of Service of the Delaware State Hospital.

Robert B. Walls, Jr., Wilmington, for Helena Bauchwitz, M.D., and George L. Curry.

William D. Bailey, Jr., of Bayard, Brill & Handelman, Wilmington, for Pierre L. Leroy, M.D.

Wheeler K. Neff, Deputy Atty. Gen., Wilmington, for the State.

Before DUFFY, Justice, McNEILLY, Justice, and MARVEL, Chancellor.

McNEILLY, Justice:

In this medical malpractice action, plaintiff appeals from the granting of all defendants' motions for summary judgment by the Superior Court on the ground that plaintiff's suit was not timely filed. The plaintiff contends that the cause of action is not barred by the Statute of Limitations because: (1) the defendants are estopped to assert the defense of the Statute of Limitations; (2) the Statute of Limitations is tolled because the cause of action was fraudulently concealed; (3) the applicable Statute of Limitations is that for trespass (10 Del.C. § 8106),[1] with its appendant tolling provision for infants and incompetents (10 Del.C. § 8116),[2] rather than that for

---

1. 10 Del.C. § 8106 provides in pertinent part: "No action to recover damages for trespass * * * shall be brought after the expiration of 3 years from the accruing of the cause of such action; *subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title*." (emphasis added)

2. 10 Del.C. § 8116 provides: "If a person entitled to any action comprehended within §§ 8101–8115 of this title, shall have been, at the time of the accruing of the cause of action, under disability of infancy or incompetency of mind, this chapter shall not be a bar to such action during the continuance of such disability, nor until the expiration of 3 years from the removal thereof."

personal injuries (10 Del.C. § 8119.) [3] We disagree.

# I

This action to recover damages for semi-paresis suffered as a result of a May 11, 1970, operation known as a prefrontal lobotomy was filed November 5, 1973, on behalf of Lydia Tilden, a mentally retarded minor patient at Delaware State Hospital (Hospital), by Mrs. Josephine Tilden, her mother and court appointed guardian *ad litem*.

In 1968 Lydia was committed to the Hospital because of her unmanageable and disruptive behavior in another State institution. Various therapies and treatments, including heavy medication, behavior therapy, occupational therapy and electroshock therapy were attempted without success. Lydia continuously fought attendants and other patients, put her fists through windows, cut herself and others, and frequently had to be placed in restraint and seclusion. Numerous employees of the Hospital, including psychiatrists, social workers and nurses, were involved in Lydia's case and discussions of how to handle her. Finally, after much interchange, a prefrontal lobotomy was recommended, explained to Mrs. Tilden, and performed after Mrs. Tilden's written consent to the operation was obtained. An improvement in Lydia's mental condition and behavior resulted from the operation, but this was accompanied by semiparesis of her left side (limited use of the left arm and dragging of the left foot).

# II

The plaintiff first contends that the defendants are estopped to plead the defense of the Statute of Limitations, because of the physician-patient, guardian-ward, fiduciary relationship between the defendants and Lydia, as a mentally retarded minor patient at the Delaware State Hospital.

We have examined the authorities cited by plaintiff: *Roy v. Hartogs,* Civ.Ct., 81 Misc.2d 350, 366 N.Y.S.2d 297 (1975); 61 *Am.Jur.2d* Physicians and Surgeons § 100; 39 *Am.Jur.2d,* Guardian and Ward § 208; 51 *Am.Jur.2d,* Limitation of Actions § 452, finding them to be inapposite. The *Roy* decision concerned whether the New York Heart Balm act barred a suit by a patient against her psychiatrist for damages resulting from sexual intercourse induced by the psychiatrist as part of her therapy; in no respect did the case touch on the Statute of Limitations question presented here. Similarly, the encyclopedia articles do not support the proposition that a physician may not assert the Statute of Limitations defense against a patient in a malpractice action. To accept the plaintiff's argument would render the Statute of Limitations in medical malpractice actions a virtual nullity, a result we find untenable.

# III

The plaintiff next contends that the Statute of Limitations is tolled because the cause of action was fraudulently concealed. By its nature a prefrontal lobotomy often renders a patient unable to comprehend his or her true physical and mental state, and it is argued that since Lydia's mother was not interested enough in her, or competent enough to be responsible for her legal rights, Lydia's doctors concealed the cause of action by taking no action with regard to her rights.

The doctrine of fraudulent concealment requires both knowledge and affirmative action on the part of the physi-

3. 10 Del.C. § 8119 provides:
"No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained * * *"

cian. In *Layton v. Allen,* Del.Supr., 246 A.2d 794 (1968), this Court stated:

> "We are unable thus to adapt the doctrine of fraudulent concealment to a situation where, as here, there is no allegation that the practitioner either had actual knowledge of the wrong done or acted affirmatively in concealing the facts from the patient. Such *scienter and affirmative action are generally deemed to be esssential elements* for the application of the doctrine of fraudulent concealment in a malpractice case." 246 A.2d at 798 (emphasis added)

We reaffirm the rule of *Layton v. Allen,* supra, and conclude that since the record shows that Lydia's semiparesis was apparent to Mrs. Tilden, the named plaintiff, and that she was informed during the summer of 1970, by a Hospital nurse the operation could have caused it, there was no concealment of the subject matter of the cause of action.[4]

### IV

Finally, plaintiff contends that the Statute of Limitations set forth in 10 Del.C. § 8106, with its appendant tolling provisions (10 Del.C. § 8116), controls the resolution of this appeal, because the consent given to the operation by Lydia's mother was not informed. Plaintiff argues that the lack of informed consent renders the operation an assault and battery, which should be considered a trespass under Section 8106.

■■ The three year Statute of Limitations (10 Del.C. § 8106), which plaintiff argues applies here is made expressly subject to the savings provisions for infants and incompetents of Section 8116, *and* Section 8119, the personal injury Statute of Limitations, which is not subject to any savings provisions. As was stated in *Lewis v. Pawnee Bill's Wild West Co.,* Del. Supr., 6 Pennewill 316, 66 A. 471 (1907):

> "It is clearly within the power of the Legislature to fix the period within which actions shall be brought, without any exceptions whatever. Whether there are exceptions in favor of certain classes of persons, or against certain other classes, depends wholly on the will of the Legislature as expressed in the statute itself, or in some other statute of which it is a part." 66 A. at 473.

Since there is no savings provision appendant to Section 8119, the controlling Statute of Limitations, and since more than two years elapsed between the accrual of the cause of action and the filing of the suit, we find it unnecessary to reach the informed consent issue.

Affirmed.

---

4. An exerpt from a deposition of Mrs. Tilden, taken on January 15, 1974, appears below:

*Question:* (by Mrs. Roth, attorney for defendant Gurdikian):

"And did Lydia know you when you came to see her?"

*Answer:* (Mrs. Tilden):

"Yes."

*Question:* "Whereabouts was she?"

*Answer:* "She was in Springer."

*Question:* "Whereabouts in Springer?"

*Answer:* "In the ward."

*Question:* "And what was she doing when you came to visit her?"

*Answer:* "She was walking around, but she couldn't walk too good. Something was wrong with her leg and, you know, hand."

*Question:* "And did you ask her what the matter was?"

*Answer:* "No, I didn't ask her. I asked one of the nurses what's the matter with her, and one of the nurses say they think it might come from that operation. She would hold her hand up, and she was sometimes walking, you know, dragging her leg."