Paul E. TAYLOR, Jr., individually and as next friend of Timothy P. Taylor, and Gladys F. Taylor, Plaintiffs,

v.

WILMINGTON MEDICAL CENTER, INC., a hospital corporation of the State of Delaware, J. Rafael Yanez, M.D., and Ricardo Castro, M.D., Defendants.

Civ. A. No. 81–147.

United States District Court, D. Delaware.

May 6, 1982.

C. Waggaman Berl, Jr., and Marie C. Bifferato, Howard M. Berg & Associates, Wilmington, Del., for plaintiffs.

Jane R. Roth, Richards, Layton & Finger, Wilmington, Del., for defendant Wilmington Medical Center, Inc.

William D. Bailey, Jr., Phebe S. Young, Bayard, Brill & Handelman, Wilmington, Del., for defendant Yanez.

Mary Pat Trostle, Biggs & Battaglia, Wilmington, Del., for defendant Castro.

## OPINION

STAPLETON, District Judge:

### I

Plaintiffs filed this medical malpractice suit based upon diversity jurisdiction on April 10, 1981. One cause of action is maintained by Paul Taylor, as next friend of his minor son Timothy Taylor, alleging that defendants negligently failed to properly diagnose and treat Timothy's birth defect called spina bifida. Because of improper closure of his spinal canal, Timothy was born with a large lump on his buttocks; plaintiff alleges that defendants' failure to surgically remove this lump shortly after birth has resulted in serious and permanent injuries to Timothy including permanent orthopedic injury, permanent incontinence, and sexual dysfunction.

Plaintiffs also allege a second cause of action, individually, arising out of the alleged negligent diagnosis of their son Timothy. Plaintiffs claim that they were informed by a resident of defendant Wilmington Medical Center and by defendant Dr. Yanez that their son's birth defect was genetic and that, therefore, they should not have any additional children. Mrs. Taylor specifically alleges that she met with Dr. Yanez to discuss this issue. Without informing her that Timothy's condition was spina bifida, Dr. Yanez is said to have advised, based on Timothy's condition and other information about the Taylor's family history, that the couple have no more children. As a result of this advice, Mr. Taylor had a vasectomy performed by another doctor on December 13, 1976.

It was not until 1979–80 that the Taylors claim they had Timothy properly diagnosed and treated. As part of the spina bifida treatment program at Children's Hospital in Washington, D. C., the Taylors received genetic counseling; it is at this time that they allegedly discovered that the disease was not necessarily genetically inherited and that the vasectomy had been unnecessary. It is with respect to this claim of the Taylors for negligent advice regarding additional children that defendants Yanez and

Wilmington Medical Center bring the current motion for summary judgment. They argue that this claim is time-barred by the applicable Delaware statute of limitations.

## II

The Delaware Supreme Court has had several occasions recently to examine statute of limitations issues in the medical malpractice context. In *Allen v. Layton*, 246 A.2d 794 (Del.Supr.1968), the plaintiff did not begin to experience pain from a hemostat that was negligently left in her abdomen in a 1958 operation until 1965; the Court ruled that the statute of limitations did not begin to run in cases in which the injury was "inherently unknowable" and the plaintiff "blamelessly ignorant" until the harmful effects of the injury first manifested themselves. Since this occurred in 1965 and the plaintiff filed suit in 1966, her claim was not barred by the two year limitation of 10 Del.C. § 8118 (1953).

In a later case remarkably similar factually to the instant one, however, the Delaware Supreme Court determined that it would not apply the time-of-discovery approach of *Layton v. Allen* to cases involving alleged negligent errors in diagnosis. In *Pearson v. Boines*, 386 A.2d 651 (Del.Supr. 1978), the plaintiff was sterilized on the recommendation of her doctor who diagnosed her as having multiple sclerosis. Two years later, she was told by another doctor that she did not have multiple sclerosis, and even if she did, sterilization was not required. The Court concluded that the plaintiff's action was barred by the two year statute of limitations because it began to run at the time of the sterilization rather than when the second diagnosis was made. The Court found that since the plaintiff was aware of the sterilization, this case was distinguishable from the inherently unknowable injury to the blamelessly ignorant plaintiff in *Layton v. Allen*. In addition, the Court announced its reluctance to adopt a new rule for error-in-diagnosis cases since the legislature had only recently adopted a new statute of limitations in the medical malpractice area. That new statute, 18 Del.C. § 6856 (Supp.1980), is applicable to the instant case:

§ 6856. General limitations.

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:

(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter; and

(2) A minor under the age of 6 years shall have until the latter of time for bringing such an action as provided for hereinabove or until the minor's 6th birthday in which to bring an action.

In *Dunn v. St. Francis Hospital, Inc.*, 401 A.2d 77, 81 (Del.Supr.1979), the Delaware Supreme Court held that this statute codified the "inherently unknowable injury" rule of *Layton v. Allen*, but limited the application of that rule to cases brought within 3 years after the injury occurred.

Plaintiff concedes, given the exclusion of error-in-diagnosis from the *Layton v. Allen* rule in *Pearson v. Boines*, the interpretation of 18 Del.C. § 6856 in *Dunn*, and the failure so far of the Delaware courts or legislature to adopt special rules for error-in-diagnosis cases, that the applicable statute of limitations in the instant case is two years. Plaintiffs argue, however, that the statute of limitations should have been tolled here by the doctrine of fraudulent concealment.

## III

Since Dr. Yanez and the Wilmington Medical Center have produced uncontested, competent evidence that all facts giving rise to plaintiffs' claims against them occurred more than two years prior to the filing of the complaint, the burden is upon

plaintiffs to come forward with competent evidence which demonstrates there is a material dispute of fact for trial. *Turner v. Lundquist*, 377 F.2d 44 (9th Cir. 1967). They have failed to do so.

 It is well-settled in Delaware that the defendant's fraudulent concealment of a cause of action may toll the statute of limitations. *Giordano v. Czerwinski*, 216 A.2d 874 (Del.Supr.1966); *Hiznay v. Strange*, 415 A.2d 489 (Del.Super.1980); *Hood v. McConemy*, 53 F.R.D. 435 (D.Del. 1971). As its name suggests, in order for tolling to occur under this doctrine, there must be both fraud and concealment; accordingly, there must be actual subjective knowledge by the defendants of the wrong done, *i.e.* scienter, and some affirmative action on his part in concealing the wrong. *Tilden v. Anstreicher*, 367 A.2d 632 (Del. Supr.1976). Since the wrong here complained of is the negligent giving of advice not to have additional children, in the context of this case, this means that defendants are entitled to summary judgment unless plaintiffs have presented competent evidence from which a trier of fact might infer that Dr. Yanez or the resident acquired actual knowledge that their advice on child bearing had been in error and that they thereafter did something to conceal that fact from the plaintiffs.

 Plaintiffs' argument in support of their fraudulent concealment contention is that "clearly the physician[s] had knowledge of the spina bifida diagnosis and . . . [their] silence, under the circumstances, constitutes affirmative action." (Def.Br. p. 17). This argument is unpersuasive, however. The fact, if true,[1] that Dr. Yanez and the resident knew Timothy was afflicted

with spina bifida is not probative on any issue raised by plaintiffs' fraudulent concealment contention. What is complained of is alleged negligent advice concerning the advisability of having further children;[2] in this context, the defendants' knowledge that Timothy had spina bifida would be supportive of plaintiffs' fraudulent concealment claim only if it were circumstantial evidence tending to show that defendants had actual knowledge, at some relevant point, that they had given erroneous advice about having children.

While a physician's knowledge of the identity of an affliction will be probative in many contexts of his or her knowledge of the presence of a condition associated with that affliction, such is not the case here. It is not the position of plaintiffs that the defendant doctors learned Timothy had spina bifida after they gave their advice concerning children. Rather, plaintiffs maintain that these defendants knew of the spina bifida before giving their advice. Nevertheless, plaintiffs' claim is that defendants' advice was negligent when given, not that it was deliberately misleading. Accordingly, we know as a fact that knowledge of the spina bifida did not, up until and through the time of the giving of the advice, trigger in these particular physicians a realization that spina bifida was non-hereditary. In this context, the defendants' knowledge that Timothy had spina bifida is of little, if any, value in answering the question whether they learned their advice had been faulty at some time after it was given. Certainly that knowledge is not alone sufficient in this setting to create a dispute with respect to a material fact.[3]

1. The documentary evidence establishes that Dr. Yanez was aware that Timothy was afflicted with spina bifida before the advice regarding child bearing was given. The record is less clear with respect to whether and when the resident gained this knowledge.

2. While the plaintiffs maintain that the physicians should have described Timothy's condition to his parents as spina bifida, there is no causal connection between their failure to do so and Mr. Taylor's vasectomy.

3. I recognize that litigants in plaintiffs' position may have to rely upon circumstantial evidence to prove the doctor's state of mind. If plaintiffs maintain that defendants became convinced their advice was in error, however, I perceive no reason why they have not filed a competent affidavit indicating what it is that makes them believe this to be the case. If there be reason for not filing such an affidavit, it should have been presented in a Rule 56(f) affidavit.

This is not the only problem with plaintiffs' position, however. In *Tilden v. Anstreicher*, 367 A.2d 632 (Del.Supr.1976), the Delaware Supreme Court expressly recognized that "the doctrine of fraudulent concealment requires ... affirmative action on the part of the physician." 367 A.2d 634. While the Court did not go on in that case to suggest precisely what conduct would constitute affirmative concealment, this declaration of Delaware law is inconsistent with plaintiffs' view that a fiduciary relationship and silence on the part of the physician constitutes the requisite affirmative action.

I note that this is not a case where the physician continued to treat the plaintiff in a manner which was inappropriate in the light of facts withheld by the physician. In such cases, the continued treatment may well be treated by the Delaware courts as an affirmative misrepresentation that the treatment being given is appropriate. Here neither defendant is alleged to have continued to counsel Mr. and Mrs. Taylor after he gave the original advice concerning the advisability of having additional children. Indeed, the record reveals nothing about the conduct of these defendants after they gave the advice except that they failed to advise Mr. and Mrs. Taylor that their son had spina bifida. I am confident that the Supreme Court of Delaware would not find "active concealment" on this record.

## IV

In this aspect of this case, plaintiffs allege that negligent advice by a physician has resulted in permanently foreclosing their future child-bearing opportunities. Despite the fact that they did not learn that this advice might be mistaken until over three years later, under Delaware law, their cause of action is governed by a two year statute of limitations from the date of injury and is thus time barred. Therefore, the summary judgment motions of defendants Yanez and Wilmington Medical Center with respect to plaintiffs' individual claims are granted.