RECREATIVES, INC., Respondent, v. MYERS, d/b/a FISH, FUR & FEATHER SPORT SHOP, Appellant.

*No. 345. Submitted under sec. (Rule) 251.54 February 5, 1975.—Decided March 6, 1975.*
(Also reported in 226 N. W. 2d 474.)

260

For the appellant the cause was submitted on the brief of *Nugent & Nugent* of Waupun; and for the respondent the cause was submitted on the brief of *Bruce R. Rasmussen, James A. Schwefel* and *Rasmussen Law Offices,* all of Beaver Dam.

HANLEY, J. The following issues are presented:

1. Did the trial court err in not allowing the adverse examination of the plaintiff's president and vice-president of marketing?

2. Were the findings of fact and conclusions against the great weight and clear preponderance of the evidence?

3. Did the trial court err by predetermining the issues or by not allowing the defendant to fully develop the testimony with regard to the quality of the merchandise?

4. Did the trial court err by involving itself in the trial in regard to a customer warranty which was not put in issue, and in expressing its own opinions on the material?

*Adverse examination.*

The first contention by the defendant is that the trial court erred in its "order" of November 15, 1972, in which the court stated that the two nonresident officers of the plaintiff were not subject to subpoena for adverse examination in Wisconsin. In the order, the court stated that the plaintiff was only a sales agency when in fact it did manufacture the ATV's and that the only issue before the court was whether the account was due and owing although the defendant's answer and the plaintiff's reply do raise other issues. The court concluded that the officers were not parties to the action and, unless the defendant made them or their corporation a party, they were not subject to subpoena. This statement in the court's order was in error because the corporation was a party to the action and there were additional issues presented by the pleadings. However, at trial the court did recognize the additional issues.

This court has recognized that an officer of a corporation is, in effect, a party to an action involving that corporation. However, the cases on this point involve the admissibility of the admissions or examination of an officer at the trial to which the corporation is a party. *Fisher v. Gibb* (1964), 25 Wis. 2d 600, 609, 131 N. W. 2d 382; *J. H. Clark Co. v. Rice* (1906), 127 Wis. 451, 106 N. W. 231.

In *Midwest Broadcasting Co. v. Dolero Hotel Co.* (1956), 273 Wis. 508, 78 N. W. 2d 898, the defendant sought an adverse examination in Wisconsin of certain nonresident officers of the corporate plaintiff, a Wisconsin corporation. The statute involved, sec. 326.12, Stats. 1955, was substantially the same as the present statute, sec. 887.12 (4). This court said:

"The ingenious argument is made that the plaintiff corporation is a party to the action and a 'person' within the definition of sec. 990.01 (26), Stats.; that, being a Wisconsin corporation, it is a 'resident' of Wisconsin and

thus its officers, though nonresidents, may be examined within this state. Whatever merit there may be in this logic, the statute is specific—if the officers to be examined are nonresidents, such examination must be held in the county of their residence. Defendant seeks to examine . . . [the president and secretary] of the plaintiff corporation. They are nonresidents. Any order directing them to attend adverse examinations in Wisconsin would be void and unenforceable. *State ex rel. McKee v. Breidenbach* (1945), 246 Wis. 513, 17 N. W. (2d) 554; *State ex rel. Walling v. Sullivan* (1944), 245 Wis. 180, 13 N. W. (2d) 550." 273 Wis. at 514.

The only difference between the statute as it was then and as it is today is the addition of the final sentence referring to service of notice and subpoena if "such party is an out-of-state resident." Laws of 1969, ch. 304.

The reasoning of *Dolero* controls here. The statute provides that the examination is to be held in the county in which the person to be examined resides unless he is personally served in a county in this state, in which case he can be examined in that county. The additional provision for service upon a party's attorney does not allow for what the defendant attempted here because the statute distinguishes between a "nonresident party" and an "officer, director or managing agent of a corporation that is a party." Therefore, the trial court did not err in quashing the subpoenas, its order being to that effect.

*Findings and conclusions.*

The defendant takes the position that the trial court erred in finding the ATV's to be of merchantable quality and that no misrepresentations had been made that induced the defendant to purchase the merchandise. He states that while the credibility of witnesses is for the trier of fact, the findings of fact are silent with regard to the credibility of any of the witnesses. He also argues that defendant established a prima facie defense and was uncontradicted and, therefore, it was error for the

trial court not to grant the relief prayed for in defendant's answer.

"This court has often held that the findings of a trial court without a jury will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence; . . . *Navine v. Peltier* (1970), 48 Wis. 2d 588, 596, 180 N. W. 2d 613. . . ." *Milbauer v. Transport Employes' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 862, 203 N. W. 2d 135.

Under the great weight and clear preponderance test the findings of the trial court are not erroneous. The evidence is not uncontradicted as to the quality of the "Max" ATV's as is suggested by the defendant here. The vehicles did have problems. However, they were correctable and were corrected. The plaintiff furnished rubber gaskets which solved the problem with the leak at the seam. The exhaust system was modified so it did not melt the body of the vehicle. Repair kits were made available to patch cracks.

Mr. Kuhn, the only purchaser of a machine from the defendant, stated that he gave his vehicle rough usage, but enjoyed it. He corrected the leaks and the cracks himself. It looked pretty good to him in comparison to others at the time he purchased it. He probably would not have traded it had the piston rings not worn out from usage and taken a long time to repair.

Mr. Farr testified that he had problems with the demonstrator that defendant loaned him for a hunting trip in the state of Wyoming. However, he also stated the wire problem could have been caused by the wires being pinched against the frame by the seat and that the transmission problem could have been caused by someone pulling on it too hard. The trial court could conclude these problems were the result of improper use of the vehicle. Mr. Farr was using the demonstrator some fifteen months after delivery by plaintiff to the defendant.

Evidence as to whether the vehicles were merchantable was received subject to the filing of a trial brief by the defendant to show that this type of testimony is admissible. No brief was filed, but the court considered the evidence because the trial judge made specific findings in this matter. The trial court's finding that the ATV's were merchantable was not against the great weight and clear preponderance of the evidence.

The defendant did plead the defense of merchantable quality. However, during the trial defense counsel repeatedly stated that warranty was not involved. Now the defendant relies on implied warranties of merchantability under sec. 402.314, Stats., and of fitness for a particular purpose under sec. 402.315.

It is clear that sec. 402.315, Stats., does not apply here. It applies "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select and furnish suitable goods . . . ." It has been said that:

". . . The whole point of an implied warranty of fitness for a particular purpose is that the product sold by the seller to the buyer will be suitable for the specific purpose which the buyer has, and any similar product which the seller may sell to the buyer which is not so suited will breach that warranty of fitness for the particular purpose. Of course abnormal or unique use may result in the prevention of the application of this implied warranty." 3 Williston, *Sales* (4th ed. 1974), p. 120, sec. 19–6.

No purpose other than that for which an all terrain vehicle is generally used is involved in this case.

As to a warranty of merchantability it also has no application here. Under sec. 402.314, Stats., such a warranty can be excluded or modified pursuant to the provisions of sec. 402.316. Under sec. 402.316 (3) (a), it is provided:

"Unless the circumstances indicate otherwise, all implied warranties are excluded by . . . language which

in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."

Here the customer warranty policy provides:

"There are no warranties which extend beyond the description on the face hereof. No other warranty, whether express or implied, shall exist in connection with the sale or use of any all-terrain vehicle manufactured by Recreatives, Inc."

Therefore, no implied warranty of merchantability is involved.

Additionally, it does not appear that the defendant met the requirements of sec. 402.608, Stats., which requires that the buyer make revocation of acceptance within a reasonable time after he discovers or should have discovered the ground for it. While this is pleaded and stated in an affidavit in opposition for a motion for summary judgment, no evidence of it was produced at trial. Defendant admitted he never had any written communications concerning the vehicles with the plaintiff.

The defendant also alleged that as a result of marketing promises made by the plaintiff the defendant sold merchandise subject to the customer being able to purchase certain accessories, to wit: snow tracks and propeller kits which the plaintiff had not supplied. The evidence disclosed that only one vehicle was sold. The purchaser, Mr. Kuhn, did not testify that his purchase was made because of promises of future additions being available for the vehicle. In addition, the defendant's statement of fact indicates defendant was told of anticipated additions to the vehicle to be manufactured at a later date. Under the facts of this case, the trial court was correct in its finding of no misrepresentations.

*Predetermination of issues and testimony as to affirmative defenses.*

The trial court, in an order dated November 15, 1972, after issue had been joined, stated that the only issue

in the lawsuit was whether or not the account was due and owing and gave no credence to the defendant's affirmative defenses. However, it did allow the defendant to attempt to establish the defense of merchantability. Initially, this was not true but the court changed its position on the matter prior to the defendant completing his testimony. All of the witnesses who testified at the trial were called or recalled to the stand after the court decided to allow the defendant to offer testimony on the quality of the ATV's. The court made specific findings based on the evidence adduced. We fail to see that defendant was denied an opportunity to put in his defense.

*Trial court interjecting itself at the trial.*

The defendant contends the trial court erred by interjecting itself into the trial. This argument is similar to the previous one in that it involves statements and questioning by the court which allegedly interfered with the defendant's presentation of his defenses and depriving him of a fair trial.

While the trial court may have gotten itself more involved than necessary, it did not deprive the defendant of an opportunity to present his defense to the action. Again, it is necessary to point out that the court changed its course on the quality of the merchandise issue and after that point defendant had an opportunity to examine or cross-examine all of the witnesses.

Had this been a jury trial, some of the statements made would probably have been prejudicial. This is especially true with regard to the statements about the "old theory of buyer beware," about "this man knew that he was buying a plastic body" and about his lawnmower which also has a top which can be raised and you can crack it, like he did, by dropping the top half down. However, considering that this was a trial to the court, the remarks were not prejudicial so as to require a new trial.

After a review of the entire record, we are satisfied that the findings of the trial court are not against the great weight and clear preponderance of the evidence and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.