Janice M. LECATES and Bruce O. Lecates, her husband and Joyce Smart and Kenneth Smart, her husband, Plaintiffs,

v.

HERTRICH PONTIAC BUICK CO., a corporation of the State of Delaware, and General Motors Corporation, a corporation of the State of Delaware, Defendants.

Superior Court of Delaware, Sussex County.

Submitted: Jan. 24, 1986.
Decided: April 24, 1986.

H. Clay Davis, III, Georgetown, for plaintiffs.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant Hertrich Pontiac Buick Co.

Somers S. Price, and John E. James, of Potter, Anderson & Corroon, Wilmington, for defendant General Motors Corp.

## OPINION

CHANDLER, Judge.

Plaintiffs seek compensatory and punitive damages for personal injuries. They charge the defendants with breach of implied warranties of fitness for a particular purpose and merchantability which allegedly applied to the automobile in which plaintiffs were injured. Pending are defendants' motions to dismiss.[1]

## I. FACTUAL BACKGROUND

Plaintiffs[2] were injured on February 27, 1982 when their 1980 Chevrolet Citation ("the Citation") spun out of control after its brakes suddenly "locked up". They claim the brake malfunction, assertedly a design defect known to both defendants, was a breach of the implied fitness and merchantability warranties that came with the Citation.

Plaintiffs were secondary owners of the Citation, having purchased it as a used vehicle from defendant Hertrich Pontiac Buick Co. ("Hertrich") on January 26, 1981. It was originally purchased on May 30, 1979, from a local new car dealer. On the date of original sale, the automobile was covered by a standard factory warranty of the defendant-manufacturer, General Motors Corporation ("GMC").

Defendants challenge the sufficiency of the complaint on alternative grounds. One, that all implied warranties were effectively modified or disclaimed. Two, that in any event all of plaintiffs' claims are barred by the statute of limitations. As I agree that the claims against GMC are time barred and that its implied warranties were effectively modified, summary judgment will be entered in GMC's favor. A contrary finding as to Hertrich causes its motion to be denied in part and granted in part.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment has been characterized as a "drastic remedy". *Sunshine Books, Ltd. v. Temple University*, 3rd Cir., 697 F.2d 90, 95 (1982). It is the moving party's burden to show the absence of a genuine issue as to any material fact. The Court must examine the movant's materials in the light most favorable to the opposing party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1969); *Moore v. Sizemore*, Del.Supr., 405 A.2d 679 (1979). When a motion is made and supported, however, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response must set forth "specific facts showing that there is a genuine issue for trial." Sup.Ct.Civ.R. 56(e).

## III. THE IMPLIED WARRANTY CLAIMS

At the heart of this lawsuit is plaintiffs' contention that GMC and Hertrich impliedly warranted the Citation as merchantable and reasonably fit and suitable for its general purpose and ordinary use as an automobile. These warranties, they say,

---

1. Since matters outside the pleadings have been submitted and considered, the motions to dismiss are treated as ones for summary judgment under Rule 56. *Brown v. Colonial Chevrolet Co.*, Del.Super., 249 A.2d 439 (1968).

2. Plaintiffs are Bruce Lecates and his wife Janice Lecates, and Kenneth Smart and his wife Joyce Smart.

For convenience, reference will be to "plaintiffs" generally, except where a particular fact or issue can be characterized accurately only by reference to one of the named individuals.

were breached. No claim or allegation is made regarding any express warranty.

### A. *GMC's Implied Warranties*

A factory warranty, accompanying the Citation on its original sale, provided in boldface type:

> *"Any implied warranty of merchantability or fitness for a particular purpose applicable to this car is limited in duration to the duration of this written warranty."*

GMC's warranty was limited to "12,000 miles or twelve months", whichever first occurred, after the original purchase. There is no dispute that the plaintiffs, as secondary purchasers nearly *two years after* its original sale, were outside the durational limit of GMC's factory warranty. Nor is there a dispute over whether GMC's implied warranty modification satisfies 6 *Del.C.* § 2–316.[3] The disclaimer is in writing, mentions the word merchantability and is conspicuous.[4]

But plaintiffs argue that while GMC's modification may well be effective under § 2–316, it is not applicable to them because they never received a copy of the factory warranty. This is a curious argument, for had plaintiffs, as secondary purchasers, been given a copy of the factory warranty, they still would not be the beneficiaries of implied warranties, as GMC had effectively limited their duration. It is even more difficult to understand how plaintiffs are in any better position by not having received the factory warranty. As secondary purchasers, they have no greater rights than the party to whom the automobile was originally sold. To say otherwise would mean that a disclaimer or warranty modification loses its effectiveness upon resale of goods, with later purchasers

receiving warranty rights denied to their sellers.

█ A secondary purchaser who claims the protection of a warranty is subject to the same disclaimers, modifications or remedy limitation clauses that were the basis of the underlying sales agreement between the original purchaser and seller. Although warranties that a seller extends to its immediate purchaser also reach any person "who may reasonably be expected to use" the goods, § 2–318, modifications or exclusions of warranty rights are equally operative against subsequent purchasers who claim to be beneficiaries of such warranties. *See* 1A Uniform Law Anno., *Uniform Commercial Code*, § 2–318 Official Comment 1, pp. 53–54. ("To the extent that the contract of sale contains provisions under which warranties are excluded or modified ... such provisions are equally operative against beneficiaries of warranties under this section").

The same point is made in *General Motors Corp. v. Halco Instruments, Inc.*, Ga. App., 9 UCC Rep.Serv. 1193 (1971). Plaintiff sued GMC and its dealer for the purchase price and cost of repairs for a used automobile. Although GMC had disclaimed all implied warranties, plaintiff tried to recover under an implied warranty theory because it had not received a copy of original factory warranty. *Id.*, 9 UCC Rep. Serv. at 1194–96. The Georgia court rejected this argument. Noting that the factory warranty effectively disclaimed all implied warranties, it reasoned that the plaintiff could receive "no higher or greater rights than were held by the party" to whom the automobile was originally sold. *Id.*, 9 UCC Rep.Serv. at 1197.

█ As secondary purchasers, plaintiffs in this case are equally subject to GMC's durational limitation of implied warranties

---

**3.** Section 2–316 provides in part:

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any

implied warranty of fitness the exclusion must be by a writing and conspicuous."

**4.** Whether a term in a commercial contract is "conspicuous" is a legal issue "for decision by the Court." 6 *Del.C.* § 1–201(10).

and, thus, are in no position to urge a breach thereof by GMC.

## B. *Hertrich's Implied Warranties*

Upon purchasing the used Citation from Hertrich, plaintiffs received two critical documents. First they received a document, captioned "USED VEHICLE GUARANTEE", which provided in relevant part:

"1. The automobile covered by this guarantee is warranted as defined by the dealer herein for the benefit of the purchaser for a period of 30 days from the date of delivery, or 1,000 miles, whichever occurs first. This fifty-fifty guarantee means that the dealer will make any necessary mechanical repairs in his shop at a cost to the buyer of only 50 percent of dealer's current list on both parts and labor, except where such repairs have become necessary by abuse, negligence, or collision."

. . . . .

"5. No other guarantees, representations or agreements, expressed or implied, have been made to the buyer."

The "guarantee" was signed by a representative of Hertrich. In addition, plaintiffs received Hertrich's sales invoice which contained the following provisions in red lettering:

### "DISCLAIMER OF WARRANTIES"

"The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The seller hereby expressly disclaims all warranties, either express or implied including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items."

Plaintiffs deny the effectiveness of Hertrich's disclaimers, saying that neither the "guarantee" nor the sales invoice meet the requirements of § 2–316.

### (1). *The Used Vehicle Guarantee*

Plaintiffs note the language of the "guarantee" does not include the word "merchantability"; nor do any of its paragraphs appear distinguished by the use of contrasting type or color. Hertrich appears to concede these points, for it argues that the guarantee satisfies § 2–316(3)(a). Section 2–316(3) provides:

"(3) Notwithstanding subsection (2)

(a) *Unless the circumstances indicate otherwise, all implied warranties are excluded by* expressions like "as is", "with all faults" or other *language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty*; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade." 6 *Del.C.* § 2–316(3) (emphasis added).

Hertrich asserts that § 2–316(3)(a) sanctions the use of language which "calls the buyer's attention to the exclusion" of implied warranties and that paragraph 5 of the guarantee *is* such language. As I am not persuaded by Hertrich's argument, the guarantee cannot be considered an effective exclusion of the implied warranties of fitness or merchantability.

My skepticism stems from the plain statutory command in § 2–316(2) that "merchantability" must be mentioned and that, for both fitness and merchantability purposes, the writing must be conspicuous. While § 2–316(3) sets out several less formal means of disclaiming warranty liabilities—notwithstanding the more specific requirements of § 2–316(2)—these less formal exceptions to the general rule were

considered by the Code draftsmen to be common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is being excluded. For example, terms such as "as is" or "with all faults" in ordinary commercial usage are understood to mean that the buyer takes the entire risk as to the quality of the goods involved. And there may be still other shibboleths that will immunize the seller from liability, though courts so far have not been eager to expand the list of acceptable phrases. *Compare First National Bank of Elgin v. Husted,* Ill.App., 57 Ill.App.2d 227, 205 N.E.2d 780 (1965) (holding statement in a sales contract that car was being sold "in its present condition" is equivalent to "as is" clause) *with Hull-Dobbs, Inc. v. Mallicoat,* Tenn.App., 57 Tenn.App. 100, 415 S.W.2d 344 (1966) (concluding that "as is" and "in present condition" are not synonymous phrases).

Similarly, § 2–316(3)(b) and (c) offer other alternatives by which sellers may shift the risk of quality of goods to buyers. Subsection (3)(b) applies where, before a contract is entered, the buyer examines or refuses to examine the goods. In that circumstance, the seller has put the buyer on notice that he is assuming the risk of defects which an examination ought to reveal.[5] Subsection (3)(c) is the catch-all clause that allows miscellaneous methods of excluding warranties, such as exclusions based on prior transactions between the parties or a general practice in the trade, which demonstrate an understanding that the buyer bore the risk of the quality of the goods.

▪ Despite the less formal methods contemplated under § 2–316(3), the means for disclaiming the implied warranties of merchantability and fitness are made very certain by the specificity of § 2–316(2). The reason for this is obvious. With respect to merchantability the literal requirement of § 2–316(2) is that it must be mentioned explicitly by name. That is because of the commercial importance such an implied warranty has for both buyers and sellers. Since the ordinary presumption is that the risk of nonmerchantability is *never* assumed by the buyer, its exclusion from a contract threatens surprise and reasonably requires that a seller make special mention of the word as a precaution against unfair advantage. *See* 1A Uniform Laws Anno., *Uniform Commercial Code,* § 2–316 Official Comment 5, p. 6. But Hertrich seemingly believes the guarantee's failure to mention the word merchantability is not fatal, as the language actually used brings it home to the buyer that the only "guarantee" was for limited repairs or replacement of parts.

No reported cases in Delaware have considered the relationship between § 2–316(2) and § 2–316(3)(a). Courts in New York and other jurisdictions, though, have held that in order to limit the implied warranty of merchantability it must be mentioned by name in the limiting clause. *See Dennin v. General Motors Corporation,* N.Y.App., 78 Misc.2d 451, 357 N.Y.S.2d 668 (1974); *Orrox Corp. v. Rexnord,* D.Ala., 389 F.Supp. 441 (1975); *Chrysler Corp. v. Wilson Plumbing Co, Inc.,* Ga.App., 132 Ga. App. 435, 208 S.E.2d 321 (1974); *Realmuto v. Straub Motors,* N.J.Supr., 65 N.J. 336, 322 A.2d 440 (1974); *Billings v. Joseph Harris Co., Inc.,* N.C.App., 27 N.C.App. 689, 220 S.E.2d 361 (1975). A review of these cases shows the disclaimer clauses were similar to the one used by Hertrich in the guarantee. Even though no detailed discussion of the interrelationship of § 2–316(2) and (3) appears, it is reasonable to

---

**5.** Of obvious importance in "buyer examination" situations will be the particular buyer's skill and the normal method of examining goods in the particular circumstances. Courts have been understandably reluctant to find that a consumer's examination of an automobile op-

erates to exclude all implied warranties. *See Rose v. Epley Motor Sales,* N.C.Supr., 288 N.C. 53, 215 S.E.2d 573, 578 (1975) (buyer not expected to discover engine's defects during test drive of automobile).

believe that these courts would not have refused to give effect to such disclaimers if subsection (3) could be read in the manner advanced by Hertrich. A more reasonable assumption is that the above referenced courts construed the disclaimers in light of the entire section, rather than focusing on only subsection (2).

On this point I have considered *Recreatives, Inc. v. Myers*, Wis.Supr., 67 Wis.2d 255, 226 N.W.2d 474 (1975) (holding *without discussion* that phrase "no other warranty, whether express or implied, shall exist" was sufficient to disclaim warranty of merchantability under § 2–316(3)(a)). Unlike Hertrich, I am not persuaded by the Wisconsin Supreme Court's conclusion. *Myers* is bereft of analysis or discussion supporting its conclusion. More importantly, it involved a buyer and seller who were both businessmen conversant with the special purpose nature of the goods (all terrain vehicles) in issue. Finally, *Myers* is similar to *Roto-Lith, Ltd. v. F.P. Bartlett & Co.*, 1st Cir., 297 F.2d 497 (1962) which evidently no longer stands in isolation on this issue. Professors James J. White and Robert S. Summers have this to say about *Roto-Lith* (and implicitly *Recreatives*):

"Section 2–316(2) explicitly requires that, subject to subsection (3), any disclaimer of the warranty of merchantability must mention the word "merchantability". Most courts have enforced this requirement, but the First Circuit apparently disregarded it in *Roto-Lith Ltd. v. F.P. Bartlett & Co.* and held a disclaimer operative that provided: "seller hereby expressly excludes any and all warranties, guarantees or representations whatsoever." Both parties were businessmen, and the quoted language certainly shows the seller's intent to bail out of all warranty responsibility. Nevertheless, one is hard pressed to justify the court's disregard of the plain statutory command, and it is unlikely that courts in the future will follow *Roto-Lith*." J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 438 (2d ed. 1980).

■ Hertrich's guarantee also fails to disclaim the implied warranty of fitness for a particular purpose. The purported disclaimer is not captioned; nor is it set apart by contrasting type or color. Section 2–316(2) makes the touchstone of conspicuousness whether a person's attention can reasonably be expected to be called to the disclaimer language. Nothing about the guarantee catches my attention, except the title "Used Vehicle Guarantee", a phrase not likely to excite concern in the ordinary buyer. The guarantee's purported disclaimer language is located below several other wordy paragraphs, all appearing in regular type. These factors, considered together, cause me to find the disclaimer inconspicuous and, thus, ineffective.[6]

Hertrich's "guarantee" is also attacked on the ground that plaintiffs misunderstood it as an additional guarantee of "protection", rather than as a limitation of rights and remedies. On this issue Hertrich submitted the affidavit of its salesman, Carl Steinbiss, who swears that he reviewed the guarantee with Mr. Lecates,

---

**6.** The parties did not consider whether the conspicuousness requirement is abandoned by § 2–316(3)(a)'s less formal exclusion mechanisms. As with my earlier discussion on the merchantability question, the trend of cases from other jurisdictions is in favor of requiring conspicuousness even under § 2–316(3)(a). To hold otherwise, these cases say, would render the conspicuousness requirement in subsection (2) useless. *See, e.g., Osborne v. Genevie*, Fla. App., 289 So.2d 21 (1974); *Woodruff v. Clark Co. Farm Bureau Co-Op. Assoc.*, Ind.App., 153 Ind.App. 31, 286 N.E.2d 188 (1972); *Fairchild Indus. v. Maritime Air Serv. Ltd.*, Md.App., 274 Md. 181, 333 A.2d 313 (1975); *Gindy Mfg. Corp. v. Cardinale Trucking Corp.*, N.J.Super., 111 N.J. Super. 383, 268 A.2d 345 (1970). *But see* J. White & R. Summers, *supra*, at 450 (it "probably violates the intent of the draftsmen to read the conspicuousness requirement into subsection (3)(a) ... but conspicuousness should be relevant in determining whether the term was sufficient to call the buyer's attention to the disclaimer and make its meaning plain to him.") In this case, the inconspicuousness of the disclaimer convinces me that its meaning would not be plain to the ordinary buyer.

and that Lecates understood its terms. Plaintiffs filed an affidavit by Lecates, denying that he reviewed the terms with Steinbiss. Indeed, Lecates says he understood the document to be *providing* warranty protection.

■ Hertrich tries to short-circuit this debate by invoking the parol evidence rule of § 2–202, but I am satisfied that summary judgment cannot be granted in Hertrich's favor on this issue. What the parties said or discussed at the time of sale is a material issue of fact. The record clearly reflects issues of fact about the nature of the conversation between Lecates and Steinbiss and about Lecates' understanding of the guarantee. Whether oral explanations of an inconspicuous written disclaimer that does not mention the word merchantability may nevertheless be relied upon to establish an effective disclaimer of the implied warranties of merchantability and fitness is a complicated question, but it need not be addressed today.

### (2). *The Sales Invoice*

Plaintiffs contend a sales invoice cannot operate as a disclaimer of warranties. First, they imply that the sales invoice in this case was not a part of the basic contract and was not a basis of the bargain. Second, they argue that the invoice disclaimer is not conspicuous. Hertrich insists the invoice disclaimer satisfies § 2–316(2) because it is conspicuous and mentions merchantability by name.

Having reviewed the sales invoice in its entirety, I think the question whether the disclaimer language is conspicuous is an extremely close one. Although the disclaimer is in a contrasting color, other sections of the invoice are similarly highlighted in contrasting print. There is also some ambiguity as to the object of the disclaimer, since it appears directly under a section

of the invoice concerned with optional equipment and accessories. And as one would expect with an invoice, one's attention is first drawn to the column dealing with price, finance charges and other fees associated with the purchase. Only a second or third look leads one's eye to the disclaimer clause. Furthermore, the body of the disclaimer paragraph is in small type, although the caption "Disclaimer of Warranties" is in larger type and underlined. On balance, although these factors make the question of conspicuousness exceedingly close, I am inclined to find it inconspicuous.

■ But the more immediate problem with the invoice disclaimer is whether it was delivered to plaintiffs *after* the contract for sale had been made.[7] This factual question is critical. "[I]f a bargain with even an implied warranty has once arisen, a subsequent disclaimer of warranty when the goods are delivered will not avail the seller." 8 S. Williston On *Contracts* § 933A at 610 (3rd ed. 1964). Most courts have held disclaimer clauses ineffective if it appeared that the documents in which such clauses appeared were given to the buyer *after* the sale had been consummated. *See Koellmer v. Chrysler Motors Corp.*, Conn. Cir., 8 U.C.C.Rep.Serv. 668 (1970); *Whitaker v. Farmhand, Inc.*, Mont.Supr., 173 Mont. 345, 567 P.2d 916 (1977); *Zabriskie Chevrolet, Inc. v. Smith*, N.J.Super., 99 N.J.Super. 441, 240 A.2d 195 (1968) (disclaimer contained in warranty delivered after contract signed held ineffective). Since it is unclear whether Hertrich's contract with Lecates preceeded delivery of the invoice or whether the invoice was, in fact, part of the sales agreement, Hertrich's motion for summary judgment on the ground that all implied warranties of fitness and merchantability were effectively disclaimed must be denied.

---

**7.** Whether the invoice was a basis of the bargain or part of the commercial transaction in this case was raised inferentially in plaintiffs' answering brief. The issue has been considered despite the general practice that only facts alleged by affidavits, depositions, admissions or other such sources may properly be entertained on a summary judgment motion. 10A Wright & Miller, *Federal Practice & Procedure* § 2722.

## C. *Unconscionability*

A final broad-scale attack on defendants' warranty disclaimers deserves mention. Plaintiffs argue vigorously that the disputed disclaimers are unconscionable attempts to limit or exclude consequential damages for personal injuries. This is prohibited, so the argument goes, under § 2–719(3) which provides:

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Whether implied merchantability and fitness warranties may be disclaimed when the alleged breach of those warranties results in personal injury to the buyer is apparently an issue of first impression in Delaware.[8] But the Official Comments of the Code draftsmen, the different purposes of § 2–316 and § 2–719, and cases from other states are helpful.

As a point of departure, I note that § 2–719 is titled "Contractual modification or limitation of remedy." This section's purpose is to describe the parameters of a seller's right to limit or modify the buyer's *remedies* for breach of warranty. It is concerned with modification of *remedies*, not rights or causes of action.[9] In contrast, § 2–316, titled "Exclusion or modification of warranties", is designed to regulate and thus to facilitate disclaimers of warranty *liability*. If the seller follows the statutory forms in § 2–316, he is promised relief from any further judicial scrutiny of the warranty aspects of his bargain.

 Warranty disclaimers and remedy modifications have distinctive functions in commercial contracts. A disclaimer clause is a device used to control the seller's liability by reducing the number of situations in which the seller can be in breach of a warranty. A remedy limitation or exclusion restricts the remedies available to one or both parties once a breach is established. Nothing in § 2–719 speaks to the permissibility of a warranty disclaimer that limits the seller's *liability*. The seller is free to disclaim all warranties, so long as he complies with § 2–316's requirements, and in doing so the problem of limiting the buyer's remedies for breach of warranty disappears. Put differently, if a seller has effectively disclaimed all warranties, there is no possibility of a breach that would support an action for consequential damages. While criteria of unconscionability may upset modifications of *remedy* under § 2–719, § 2–316—which contains no reference to such notions in either text or comment—is not similarly preempted.

The Delaware study comment to § 2–719 supports this view. There the reporters observed:

"[E]ven though the seller may not be permitted to limit or exclude his liability for consequential damages, in certain types of cases he may be able to disclaim warranties pursuant to the provisions of § 2–316 of the U.C.C."

The reporters then referred to Official Comment 3 to § 2–719, prepared by the American Law Institute and the National Conference of Commissioners on Uniform

---

**8.** The question was alluded to, but passed over, in *Cline v. Prowler Indus. of Md., Inc.*, Del.Supr., 418 A.2d 968, 977 n. 18 (1980).

**9.** A distinction between "remedy" and "obligation" is evident elsewhere in the code. Section 2–301 defines "obligation" as the seller's duty to "transfer and deliver ... in accordance with the contract" and Official Comment 34 to § 1–201(34) states that "remedial rights" are "those to which an aggrieved party can resort on his own motion", suggesting that obligations and remedies are counterparts. Disclaimers deal with "obligations" and "warranties", not "remedies".

The distinction between remedy and obligation is well known in constitutional law. *See Home Bldg. & Loan Ass'n. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (power of states to modify or alter contractual remedies without impairing the obligation of contract within meaning of Article I, Section 10 of the Constitution).

State Laws. Comment 3 goes out of its way to preserve the line of distinction between warranty modification and remedy modification:

> "Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks. *The seller in all cases is free to disclaim warranties in the manner provided in § 2–316.*" 1A Uniform Laws Anno., *Uniform Commercial Code* § 2–719 Official Comment 3, p. 494 (emphasis added).

The emphasized sentence appears *after* the discussion of remedy limitations and *after* the discussion of the extent to which such clauses are governed by unconscionability criteria. It then provides that the seller may ·disclaim warranties in all cases, strongly suggesting that the draftsmen intended that disclaimers valid under § 2–316 would be valid under § 2–719. Official Comment 2 buttresses this interpretation:

> "This article treats the limitation or avoidance of consequential damages as a matter of limiting remedies for breach, separate from the matter of creation of liability under a warranty. *If no warranty exists, there is of course no problem of limiting remedies for breach of warranty.*" 1A Uniform Laws Anno. *Uniform Commercial Code* § 2–316, Official Comment 2, p. 6 (emphasis added).

In addition, § 2–316(4) suggests the applicability of different rules when the seller's obligation is to be cut back through limitations of *remedy* rather than through disclaimers.

In the eyes of most commentators, invoking the unconscionability criteria of § 2–719(3) to invalidate an otherwise valid disclaimer under § 2–316 "flies in the face of the apparent intention of the draftsmen." J. White & R. Summers, *supra*, § 12–12 at 480; Leff, *Unconscionability And The Code—The Emperor's New Clause*, 115 U.Pa.L.Rev. 485 (1967). Cases from other jurisdictions hold likewise. *See Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889 (1983) (enforcing warranty disclaimer in personal injury action despite unconscionability challenge); *Masker v. Smith*, Fla.App., 405 So.2d 432 (1981) (affirming summary judgment for seller where buyer sued to recover for personal injuries on warranty of fitness theory despite disclaimer of such warranty); *Ford Motor Co. v. Moulton*, Tenn.Supr., 511 S.W.2d 690, *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974) (disclaimer of implied warranty coupled with expiration of express warranty in contract for sale of car precluded personal injury action based upon warranty).

 I also conclude that the unconscionability provision of § 2–719(3) does not operate as a restriction on warranty disclaimers and, therefore, I reject plaintiffs' contention that GMC and Hertrich's disclaimers must be declared prima facie unconscionable.

While the plaintiffs did not raise it, I have also considered the applicability of § 2–302's unconscionability criteria to the warranty disclaimers in question.[10] There is no agreement among commentators or courts as to whether otherwise valid warranty disclaimers under § 2–316 are strikable as unconscionable under § 2–302.[11] As-

---

**10.** Section 2–302 provides:

"(1) *If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid àny unconscionable result.*"

"(2) When it is claimed or appears to the court that the contract or any clause thereof

may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." (emphasis added).

**11.** *Compare* Leff, *Unconscionability And The Code—The Emperor's New Clause*, 115 U.Pa.L. Rev. 485 (1967) (concluding that § 2–316 preempts the field on warranty disclaimers) *with* J. White & R. Summers, *supra*, § 12–11

suming *arguendo* that § 2–302 is not preempted by § 2–316 from operation in the domain of warranty disclaimers, I nevertheless cannot conclude that the disclaimers in this case are either substantively or precedurally unconscionable.

No attack has been made on the bargaining process giving rise to the agreement but, rather, plaintiffs appear to attack the *result* of that process. They insist it is unfair to give effect to warranty disclaimers when personal injuries are the consequence of the alleged breach of warranty. Stated differently, plaintiffs invoke the social policy, embodied in the equity unconscionability doctrine, that serious hardship should not be permitted—regardless of the fairness of a bargaining process or the validity at the time of drafting of a contractual term allocating unknown risks—without special justification. This policy is an attractive one, and strikes a sympathetic chord with the Court. It would be easy to administer, as harsh results are readily identified when they occur. But the difficulty in adapting it to Delaware's version of the uniform commercial code is that substantially all of the important provisions in a normal sales contract are *potentially* exceedingly harsh. Provisions often are inserted in contracts to determine who will stand a loss, perhaps even a total loss, or who will enjoy a significant litigation advantage if the question comes up. That kind of potential harshness is inherent in warranty disclaimers. The touchstone of unconscionability cannot be "harshness of the result" without more since, as mentioned, disclaimer clauses are *designed* to be harsh. Unless one says that *all* losses should be spread or split, as some have recommended in special situations,[12] a harsh result in and of itself cannot identify the impermissible.

(citing cases on both sides of the controversy, but suggesting that courts should apply the unconscionability criteria of § 2–302 to warranty disclaimers).

Section 2–302(1) makes this same point in a different way, in my opinion, when it states that no clause may be stricken unless it was unconscionable "at the time it was made." I think this language was inserted to make it clear that courts are not to apply hindsight, but rather are to consider the unconscionability issue *as of the contract's formation date.* It certainly suggests that the draftsmen wanted no part of the doctrine that subsequently occurring hardship alone may invalidate a contract. When a disclaimer is upheld as effective, its certain effect is to reward the disclaiming seller with victory, while the buyer loses. Distilled to its essence, then, plaintiffs' argument is an attack on GMC's disclaimer precisely because it succeeded in disclaiming a warranty. But if we are to accept as a gloss on § 2–316 the social policy that disclaimers are per se "evil" when they succeed and a buyer is injured as a result of the breach, it is a gloss to be added "by the Legislative, rather than the Judicial Branch of the Government, the function of which is not to change established law but to apply it." *Cline v. Prowler Indus. of Md., Inc., supra,* 418 A.2d at 979; *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930) ("It is not enough that hard and objectionable or absurd consequences, which probably was not within the contemplation of the framers, are produced by an action of legislation ... [I]n such case the remedy lies with the law-making authority, and not with the courts.")

I say this knowing that recent judicial history casts doubt upon the enforceability of disclaimers that operate to preclude liability for personal injuries caused by defective consumer goods. *See* Peters, *Remedies for Breach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Road Map to Arti-*

12. *See* Calabresi, *The Decision for Accidents: An Approach to Nonfault Allocation of Costs,* 78 Harv.L.Rev. 713 (1965). For some of the more emotional facets of this area, *see* Calabresi, *Fault, Accident and the Wonderful World of Blum and Kalven,* 75 Yale L.J. 216 (1965).

*cle Two*, 73 Yale L.J. 199, 282 (1966) (citing *Henningsen v. Bloomfield Motors, Inc.*, N.J.Supr., 32 N.J. 358, 161 A.2d 69 (1960) a pre-Code case, and its progeny). A few courts, using less than forthright reasons, have refused to enforce disclaimers in such cases. They have disallowed disclaimers by discovering breach of an undisclaimable express warranty, by finding authority in § 2–302 on unconscionable bargains (despite § 2–316's silence), or by concluding that the disclaimer had never been brought home to the consumer in such a way as to become an effective part of the contract of sale. *See* J. White & R. Summers, *supra*, at 479–80 (collecting cases); Peters, *Remedies for Breach, supra.*

One can easily understand the emotional pressure to reach a no disclaimer result, using even the unconscionability route if it cannot be done otherwise. And one has to be troubled by the paradoxical distinction the commercial code has drawn between the seller who has limited damages by disclaiming responsibility for the goods he has sold and the seller who has limited damages by a provision in the contract restricting the consequences of breach. *See* Peters, *Remedies for Breach, supra,* at 282 (adding that "there appears to be no sound basis" for the distinction); R. Nordstrom, Law of Sales, 130–31 (1970) (encouraging courts to ignore the distinction). But that is what the statutory provisions say. It should hardly be surprising, though, that courts faced with a consumer plaintiff seriously injured by a large corporate defendant's product are often willing to disregard the literal terms of the code. Yet there are

also good reasons to doubt the wisdom of twisting a carefully designed statutory scheme, especially when alternative theories of relief may be available. It is a problem, in my opinion, best addressed by the Legislature, which could simply regulate certain contractual provisions out of existence. There would be nothing particularly offensive about nullifying warranty disclaimers regarding consumer goods. Other state legislatures have done precisely that. *See* Md.Com.Law Code Ann. § 2–316.1 (1975) ("any oral or written language used by a seller of consumer goods ... which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose ... is unenforceable.").[13] Even in Delaware the commercial code already has taken similar protective steps in other places.[14] That route is preferable, it seems to me, to the twisting of a carefully designed statutory scheme or to judicial manipulation of high-level abstractions like unconscionability, no matter how heartwarming the ad hoc results might be.

For the foregoing reasons, I cannot accept plaintiffs' invitation to declare defendants' disclaimers unconscionable.

## IV. TIMELINESS OF PLAINTIFFS' WARRANTY CLAIMS

■■■ Defendants contend that even if their warranty disclaimers were ineffective they are still entitled to summary judgment because plaintiffs' complaint—filed on June 12, 1984—was not timely. Since no warranty of future performance is alleged,[15]

---

**13.** There is no reason to believe that preserving sellers' power to thrust on consumers all risks of personal injury resulting from defective products is necessary to keep the wheels of commerce turning. Evidence from states such as Maryland certainly is not to the contrary. *Cf.* Leff, *supra,* 115 U.Pa.L.Rev. 485, 516 (1967).

**14.** *See, e.g.,* § 2–318 (forbids efforts to exclude members of the buyer's family from warranty protection); § 9–318(4) (invalidates efforts to prohibit account assignments).

**15.** Plaintiffs' complaint contains no reference to an explicit warranty of future performance. It

alleges simply that the Citation "was impliedly warranted by defendants to be fit for the purpose for which it was purchased and to be of merchantable quality" (Complaint, ¶ 11), and that "these warranties were breached". (Complaint, ¶ 12). Because an implied warranty by definition cannot be explicit, it cannot extend to future performance. *See e.g., Holdridge v. Heyer-Schulte Corp.,* D.N.Y., 440 F.Supp. 1088 (1977) (holding that an implied warranty, by its very nature, cannot explicitly extend to future performance); *Irons v. Ford Motor Co.,* D.Pa., 21 U.C.C.Rep.Serv. 556 (1977). *See generally,* Special Project, *Article Two Warranties in Commer-*

the defendants argue that plaintiffs' claims are barred under 6 *Del. C.* § 2–725(1), which requires a breach of contract action to be filed within four years after the action has accrued.

Plaintiffs do not dispute that § 2–725(1) is the appropriate statute to consider. The war rages over whether plaintiffs' cause of action accrued on January 26, 1981, when Lecates purchased the used Citation, or on May 30, 1979, when the Citation was purchased new by its original owners. If the cause accrued on the earlier date, this action is time barred. In the event their claims are time barred, plaintiffs' last line of defense is that the statute of limitations should be tolled pursuant to the doctrines of equitable estoppel or fraudulent concealment.

An examination of § 2–725, and the cases construing it, indicates that plaintiffs' first argument cannot withstand analysis. The statute (in its relevant parts) provides:

Section 2–725. Statute of Limitations and Contracts for Sale."

"(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitations to not less than one year but may not extend it."

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of deliver is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Plaintiffs claim the breach of warranty accrued either when the used Citation was purchased on January 26, 1981 or when the accident happened on February 27, 1982. They reason that since they could not have discovered the breach before they bought the Citation, the four year limitation period should not be started until the date of purchase or the date of the accident.

Plaintiffs confuse some very basic points. Section 2–725(2) provides that a "breach of warranty occurs when tender of delivery is made." It does not say that breach occurs when a buyer first learns of the breach, except in cases of explicit warranty of future performance. Indeed, the statute rules out consideration of the "aggrieved party's lack of knowledge of the breach." As the leading commentators have put it:

"The statute normally commences to run upon tender of delivery, and the clock *ticks even though the buyer does not know the goods are defective.* This outcome contrasts markedly with that under the typical tort statute which does not begin to run until the defect manifests itself by causing some injury." J. White & R. Summers, *supra,* § 11–9 at 418 (emphasis in original).

Carried to its conclusion, plaintiffs' argument proves itself to be illogical. They insist the four year limit is revivified upon *each* successive sale to *each* successive buyer in the commercial chain of life of a product. Implicit in this argument, at least as I understand it, is the requirement that each successive sale occur before the last day of the twelfth month of the fourth year, else the statutory window of opportunity closes. Nothing in § 2–725 gives comfort to this theory, however. And its absurd consequences are enough to dissuade me from embracing it. A revivication theory would necessarily mean that every seller is exposed to the risk of warranty liability for the life of the goods or products sold. The period of repose assured by the statute of limitations would be a chimera, for the statute might not expire until the product itself expires.

A similar conclusion appears in *Sellon v. General Motors Corp.,* D.Del., 571 F.Supp.

1094 (1983).[16] Plaintiff in *Sellon* was the secondary purchaser of a GMC automobile. His immediate seller was his father, who originally purchased the vehicle on October 24, 1973. Plaintiff filed suit on December 26, 1979, more than four years after the father's original purchase date. Judge Schwartz chose the *original* purchase as the starting date for the statute of limitations, and the action was time barred. 571 F.Supp. at 1097–1100.

■■■■■ As in *Sellon*, claims against GMC are barred by § 2–725(2) because they were filed more than four years after the cause accrued on May 30, 1979. However, since any implied warranties in the sale by Hertrich came into existence for the first time on the date of sale (January 26, 1981) the suit was filed well within the four year period and is timely.

As a last defense to the timeliness problem, plaintiffs seek to toll the statute of limitations on grounds of equitable estoppel or fraudulent concealment. This argument is without merit.

■■■■■ A defendant's fraudulent concealment [17] of a cause of action may toll the statute of limitations. *See Hiznay v. Strange,* Del.Super., 415 A.2d 489, 491–92 (1980); *Giordano v. Czerwinski,* Del.Supr., 216 A.2d 874, 876 (1966). But a claim of fraudulent concealment requires the twin showing of (a) the defendant's knowledge of the alleged wrong, and (b) an affirmative act of concealment by the defendant. *See Tilden v. Anstreicher,* Del.Supr., 367 A.2d 632, 635 (1976). An affirmative act of concealment suggests "actual subjective knowledge by the defendant of the wrong done, *i.e.,* scienter and some affirmative action on his part in concealing the wrong."

*Taylor v. Wilmington Medical Center, Inc.,* D.Del., 538 F.Supp. 339, 342 (1982).

Plaintiffs contend GMC was aware of defects in the Citation's brake system which it had a duty to disclose. A general duty to warn, however, does not as a matter of law satisfy the requirement of demonstrating actual misrepresentation or fraudulent artifice by which the defendant has prevented the plaintiffs from discovering the basis for their cause of action. *See Sellon v. General Motors Corp., supra,* 571 F.Supp. at 1098–1100; *Shockley v. Dyer,* Del.Supr., 456 A.2d 798, 799 (1983). Not having alleged any actual misrepresentation or fraudulent artifice, plaintiffs' contention boils down to a charge that GMC's "knowing silence" qualifies as fraudulent concealment. In effect, they accuse GMC of sitting quietly while they were driving around in a known dangerously defective product.

■■■■ This argument misconceives the doctrine of fraudulent concealment.

"Mere silence or failure to disclose does not constitute such fraudulent concealment as will suspend operation of [a statute of limitations]. Some actual trick or artifice to prevent knowledge of the fact or inquiry with respect thereto, some affirmative act of concealment, or, as sometimes stated, some act of negligence so gross as to be equivalent to intentional fraud, or some misrepresentation to exclude suspicion and prevent inquiry, and which, according to the decisions on the question, actually prevents discovery, must be shown ..." 54 C.J.S., *Limitation of Actions,* § 206 pp. 226–228 (1948). *See also* 51 Am.Jur.2d, *Limitation of Actions,* § 149 (1970).

---

16. For a thoughtful analysis of *Sellon* and related cases on the distinction between present and future performance warranties under § 2–725(2), *see Pack & Process, Inc. v. Celotex Corp.,* Del.Super., 503 A.2d 646 (1985).

17. This "defense" is actually advanced in answers to certain interrogatories. Plaintiffs' complaint does not allege with particularity the factual circumstances constituting fraudulent concealment, as is required under Superior Court Civil Rule 9(b). *See Hiznay v. Strange,* Del.Super., 415 A.2d 489, 492 (1980). Moreover, it does not appear that these contentions are made on behalf of Mr. and Mrs. Smart, as no communication or contact of any kind occurred between them and GMC.

An exception to the affirmative act requirement has been recognized by some courts where a plaintiff and defendant are in a fiduciary relationship, such that a greater duty of disclosure of information exists in the person in the position of trust. *See Hood v. McConemy*, D.Del., 53 F.R.D. 435, 447 (1971) (because attorney-client relationship is fiduciary and attorney is held to strictest standard of fidelity and good faith, silence held sufficient to constitute fraudulent concealment). *But see Tilden v. Anstreicher, supra*, 367 A.2d at 634–35 (doctrine of fraudulent concealment requires affirmative action on part of physician in action by *patient*). No fiduciary relationship has been alleged to exist in this case. Nor has one been suggested. Thus, the exception—even were it recognized by the Delaware Supreme Court— does not apply given the undisputed facts of this case.

Next, taking a slightly different tack, plaintiffs argue GMC is estopped from relying on the statute of limitations because plaintiffs were induced to relax their vigilance and refrain from bringing suit. They point to certain notices and correspondence between the parties antedating this lawsuit.

About thirteen months after the accident, Mr. and Mrs. Lecates received a notice letter sent to GMC customers advising of problems with the Citation's braking system and directing owners to have the vehicle inspected. They promptly notified GMC of their accident. Mr. Lecates's May 4, 1983 letter concluded:

"Since we have received the letter from General Motors outlining the defect in the automobile, and the consequence thereof, we are seeking your help in the matter and feel there should be some additional remuneration from the Company for the financial loss which we suffered."

GMC responded by requesting additional information. Its customer representative wrote to Lecates on May 10, 1983, stating:

"Because your correspondence did not include a telephone number, I am enclosing a brief questionnaire. When we are in receipt of the needed information, we will begin our investigation. Please return the questionnaire to my attention. Thank you for allowing me to assist you and for your cooperation in this matter."

After a follow-up inquiry from Mrs. Lecates on July 21, 1983, GMC indicated in August, 1983, that it had referred the matter to its insurer. No further correspondence was received from GMC. This action was filed on June 12, 1984.

Resolving every inference and doubt in favor of the plaintiffs, GMC's correspondence simply does not create an estoppel. GMC's communications to Lecates sought information regarding their accident. Plaintiffs have not pointed to any particular statement that lulled them into inactivity or that lead them reasonably to believe that GMC recognized the validity of their claims. An estoppel requires more than a request for information regarding an incident that may or may not give rise to a lawsuit. All of the cases and authorities brought to my attention agree that even participation in settlement negotiations with a claimant ordinarily does not create an estoppel where the purpose has been to determine whether there is any basis for the claim asserted. *See, e.g., Cumberland Valley Joint School Authority v. Haldeman*, Pa.C.Pl., 35 UCC Rep. Serv. 1185 (1982); 51 Am.Jur.2d, *Limitation of Actions*, § 444 (1970). Applying these principles to the undisputed facts, there is no basis for tolling the statute of limitations. Plaintiffs' claims against GMC are barred by § 2-725(2).

## V. NEGLIGENCE

During briefing on the motions for summary judgment, a question arose as to whether plaintiffs had asserted a claim based on negligence as well as breach of implied warranties. Paragraph 14 of the complaint alleges:

"The 1980 Citation was designed with a defective braking system, which de-

fendants knew and had ignored at the time of the sale, which defect caused the accident above described."

There is little doubt that this allegation, to the extent one can read it as charging the defendants with negligence, is not sufficient to meet the particularity requirements of Superior Court Civil Rule 9(b). But even were that requirement met, the claim would also be time barred under 10 *Del.C.* § 8119.[18] A claim for personal injury based on negligence must be brought within two years from when the injury was sustained. The injury here was sustained on February 27, 1982 and suit was filed on June 13, 1984, more than two years later. Any properly pleaded negligence claim would also be time barred.

### Conclusion

For the reasons stated herein, defendant GMC's motion for summary judgment is granted as to all claims. Defendant Hertrich's motion for summary judgment is granted with respect to plaintiffs' negligence claim and denied with respect to all other claims.

---

**18.** Section 8119 provides:

"No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; subject, however, to the provisions of § 8127 of this title."